VICTOR JIH, SBN 186515
WILSON SONSINI GOODRICH
& ROSATI, P.C.
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329
vjih@wsgr.com

MARK R. YOHALEM, SBN 243596
WILSON SONSINI GOODRICH
& ROSATI, P.C.
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
mark.yohalem@wsgr.com

THOMAS R. WAKEFIELD, SBN 330121
WILSON SONSINI GOODRICH
& ROSATI, P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (424) 446-6900
twakefield@wsgr.com

ERIC T. KOHAN, SBN 325076
WILSON SONSINI GOODRICH
& ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
ekohan@wsgr.com

*Attorneys for Defendants*
*ByteDance Inc., TikTok Inc., &*
*TikTok USDS Joint Venture LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

LISA TSERING, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BYTEDANCE INC., TIKTOK, INC., and TIKTOK USDS JOINT VENTURE LLC,

Defendants.

Case No. 3:26-cv-01536-JD

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**

Judge: Hon. James Donato
Hearing Date: June 25, 2026
Hearing Time: 10:00 a.m.
Courtroom: 11

# TABLE OF CONTENTS

**Page**


NOTICE OF MOTION TO DISMISS ..... 1

STATEMENT OF THE ISSUES ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. RELEVANT BACKGROUND ..... 3

III. LEGAL STANDARD ..... 4

IV. PLAINTIFF'S PRIVACY CLAIMS FAIL ..... 4

- A. California's High Bar for Privacy Claims ..... 4
- B. The Complaint Lacks Factual Allegations Sufficient to Establish the Three Key Elements of a California Privacy Claim ..... 6
  - 1. No Reasonable Expectation of Privacy ..... 6
  - 2. No Intentional Intrusion ..... 8
  - 3. Any Intrusion Was Not Highly Offensive ..... 8
  - 4. Plaintiff Cannot Shoehorn this Case into *In re Facebook* ..... 9

V. PLAINTIFF'S WIRETAPPING CLAIMS FAIL ..... 10

- A. Inadequate Allegations Regard the "Contents" of Communications ..... 10
- B. Inadequate Allegations Regarding Interception "in Transit" ..... 12
- C. Inadequate Allegations Regarding "Reading" the Contents ..... 13

VI. PLAINTIFF'S SECTION 638.51 CLAIM FAILS ..... 13

VII. PLAINTIFF'S UCL CLAIM FAILS ..... 15

VIII. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Babbini v. Reddit, Inc.*,
No. 3:26-cv-01532 (N.D. Cal. Feb. 20, 2026) .......... 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Briskin v. Shopify Inc.*,
2026 WL 161441 (N.D. Cal. Jan. 21, 2026) .......... 8

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 10

*Burroughs v. Northrop Grumman Corp.*,
2000 U.S. Dist. LEXIS 23668 (C.D. Cal. Oct. 16, 2000) .......... 4

*Cabral v. Supple, LLC*,
2012 WL 12895825 (C.D. Cal. Oct. 3, 2012) .......... 7

*Cherkin v. PowerSchool Holdings, Inc.*,
2025 WL 844378 (N.D. Cal. Mar. 17, 2025) .......... 15

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 12

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023), *aff'd*, 148 F.4th 153 (3d Cir. 2025) .......... 11

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023), *vacated for lack of subject matter jurisdiction*, 2024 WL 1184702 (S.D. Cal. Mar. 18, 2024) .......... 7, 9, 10

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .......... 12

*Dellasala v. Samba TV, Inc.*,
2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .......... 13

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 8, 12

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 13, 15

*Echeverria-Corzan v. Torrid LLC*,
No. 3:25-cv-06926-JD, Dkt. No. 35 (N.D. Cal. Feb. 26, 2026) .......... 15

*Epstein v. Wash. Energy Co.*,
83 F.3d 1136 (9th Cir. 1996)........................................................................................ 4

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011)......................................................................................... 8

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023)................................................................ 11

*Griffith v. TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) .......................................................... 6, 10, 12

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023)............................................................................ 15

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) ...................................................................... 15

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ....................................................................... 10

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ......................................................................... 5, 9

*Heeger v. Facebook, Inc.*,
2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) .................................................................... 6

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ............................................................................ 7

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024)............................................................................ 12

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ............................................................................................. 4, 6, 8

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ...................................................................................................... 4, 5

*Hohenshelt v. Super. Ct.*,
18 Cal. 5th 310 (2025) .................................................................................................... 14

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024).................................................................... 4, 6

*In re Apple Data Priv. Litig.*,
2026 WL 146025 (N.D. Cal. Jan. 20, 2026) ..................................................................... 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)..................................................................................... 7, 9, 10

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .............................................................................. 4

*In re iPhone Application Litigation*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................. 9

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..................... 6, 7, 8

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)..................... 11

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ..................... 7

*King v. Hard Rock Café Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025)..................... 11

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ..................... 13

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)..................... 12

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) ..................... 11, 13

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..................... 4, 5, 7

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) ..................... 13

*Nelsen v. King Cnty.*,
895 F.2d 1248 (9th Cir. 1990), *aff'd*, 32 F. App'x 360 (9th Cir. 2002)..................... 4

*People v. Nakai*,
183 Cal. App. 4th 499 (2010)..................... 5

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)..................... 6

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)..................... 5

*Sanchez v. L.A. Dep't of Transp.*,
2021 WL 1220690 (C.D. Cal. Feb. 23, 2021),
*aff'd*, 39 F.4th 548 (9th Cir. 2022) ..................... 10

*Sanchez-Scott v. Alza Pharma.*
86 Cal. App. 4th 365 (2001)..................... 4

*Smith v. Rack Room Shoes, Inc.*,
2026 WL 183852 (N.D. Cal. Jan. 23, 2026) ..................... 12

*State v. Mixton*,
250 Ariz. 282 (2021) ..................... 5

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024),
*aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025)..................... 5

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .................................................... 13

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .................................................... 2, 9

*Turrieta v. Lyft, Inc.*,
16 Cal. 5th 664 (2024) .................................................... 14

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .................................................... 12

*Variety Media, LLC v. Super. Ct.*,
No. B350578 (Cal. Ct. App.) .................................................... 15

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) .................................................... 11

*Wright v. TrueCare Prop. Holdings, LLC*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) .................................................... 8

*Yee v. Snap, Inc.*,
No. 3:26-cv-01528 (N.D. Cal. Feb. 20, 2026) .................................................... 2

*Zhu v. Pinterest, Inc.*,
No. 3:26-cv-01529 (N.D. Cal. Feb. 20, 2026) .................................................... 2

**STATUTES**

18 U.S.C. § 2511 .................................................... 2

Cal. Bus. & Prof. Code § 17204 .................................................... 15

Cal. Bus. & Prof. Code § 22575-22579 .................................................... 14

Cal Civ. Code § 1798.120 .................................................... 14

Cal. Penal Code § 631 .................................................... 13

Cal. Penal Code § 631(a) .................................................... 1, 2, 4

Cal. Penal Code § 632 .................................................... 2, 4, 6

Cal. Penal Code § 632(a) .................................................... 1

Cal. Penal Code § 638.50 .................................................... 13, 14

Cal. Penal Code § 638.50(b) .................................................... 13

Cal. Penal Code § 638.51 .................................................... 1, 2, 13, 14, 15

Cal. Penal Code § 638.51(a) .................................................... 4

Cal. Penal Code § 638.52 .................................................... 14

Cal. Penal Code § 638.52(c) .................................................... 14

Cal. Penal Code § 638.52(d)(1) ........ 14
Cal. Penal Code § 638.52(d)(3) ........ 14
Cal. Penal Code § 638.53 ........ 14
California Consumer Protection Act ("CCPA") ........ 5, 14, 15
California Invasion of Privacy Act ("CIPA") ........ 1, 2, 4, 6, 10, 13, 14, 15
California Online Privacy Protection Act ........ 14
California Privacy Rights Act ("CPRA") ........ 14
Delete Act ........ 6, 14
Electronic Communications Privacy Act ("ECPA") ........ 4, 10
Opt Me Out Act ........ 6, 14
Unfair Competition Law ("UCL") ........ 1, 2, 4, 15

**RULES**

Fed. R. Civ. P. 12(b)(6) ........ 1

**MISCELLANEOUS**

Marjorie Richter, *The California Consumer Privacy Act—Legal glossary*, Thomson Reuters (Dec. 15, 2025) ........ 14

**NOTICE OF MOTION TO DISMISS**

**PLEASE TAKE NOTICE** that, on June 25, 2026, at 10:00 a.m., or as soon thereafter as counsel may be heard, Defendants ByteDance Inc., TikTok Inc., and TikTok USDS Joint Venture LLC will, and now do, move to dismiss the Class Action Complaint ("Complaint") under Federal Rule of Civil Procedure 12(b)(6). This Motion is based on this Notice, the accompanying Memorandum, the Request for Judicial Notice, and the Declaration of Eric T. Kohan ("Kohan Decl.") and its exhibits, as well as all the records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented and considered by the Court.

**STATEMENT OF THE ISSUES**

1. Whether Plaintiff states claims for intrusion upon seclusion and violation of § 632(a) of the California Invasion of Privacy Act ("CIPA") without specifying the data she claims Defendants took from her, explaining how Defendants took such data intentionally, or alleging that Defendants engaged in conduct that is highly offensive to a reasonable person.

2. Whether Plaintiff states claims for violations of § 631(a) of CIPA or the Electronic Communications Privacy Act ("ECPA") without specifying which "contents" of her communications were allegedly intercepted, describing how those contents were intercepted "in transit," or alleging that Defendants read or attempted to read those contents while "in transit."

3. Whether Plaintiff states a claim for a violation of § 638.51 of CIPA despite alleging that the TikTok pixel and its associated cookies (the "Pixel") collect the "contents" of communications, which precludes the Pixel from satisfying the definition of a "pen register," and despite internet communications being outside proper scope of § 638.51, given its text and history.

4. Whether Plaintiff states a claim for a violation of the Unfair Competition Law ("UCL") without alleging loss of money or property.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The Court should dismiss Plaintiff's Complaint, which fails to plausibly allege that Defendants violate CIPA or any other law by providing industry-standard tools to advertisers. The recent wave of CIPA lawsuits has set limits and imposed requirements on the claims plaintiffs can bring—as Plaintiff

and her counsel well know, for they just lost such a case.[1] *See Tsering v. Meta Platforms, Inc.*, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) (dismissing same claims against Meta). This Court, too, has addressed several CIPA cases, as have other judges in this District and in the Ninth Circuit more generally. A plaintiff must, at a minimum, allege that her sensitive data was intentionally taken in a highly offensive manner, or that the defendant's tools read the contents of her communications with websites while those communications were in transit. An allegation that a web pixel or similar tool provided by the defendant ***can*** collect sensitive data is not enough. Yet that is all Plaintiff alleges here.

Plaintiff's privacy claims for intrusion upon seclusion and violation of § 632 of CIPA fail because Plaintiff has not plausibly alleged that Defendants received any sensitive data from her through the Pixel. The Complaint is devoid of the allegations necessary to show that she had a reasonable expectation of privacy in whatever data was received, that Defendants intentionally invaded her privacy, and that the invasion was highly offensive. The Pixel is an industry-standard tool, and Defendants direct advertisers to be transparent, to secure users' consent, and not to send sensitive data.

Plaintiff's wiretapping claims for violations of § 631(a) of CIPA and § 2511 of ECPA likewise fail. Plaintiff has not alleged that Defendants intercepted any "contents" of her communications. She has not alleged—and cannot allege—facts sufficient to show any contents were taken while "in transit," a strict test in the Ninth Circuit. And she has not plausibly alleged that Defendants read or attempted to read her communications while they were "in transit."

Plaintiff pleads herself out of any claim under § 638.51 of CIPA by alleging that the Pixel can capture the contents of communications. The definition of a pen register explicitly excludes devices that do so. Further, the Court should rule that § 638.51 does not apply to internet communications.

Finally, as this Court has held, Plaintiff's purported harm of misappropriated data does not suffice for a UCL claim.

While the Court should grant Defendants' concurrently filed motion to transfer—and thus need not reach this Motion—if it does not transfer the case, then the Complaint should be dismissed.

---

[1] The Complaint copies entire passages from three other putative class actions contemporaneously filed by her counsel against other providers of similar tools. *See Zhu v. Pinterest, Inc.*, No. 3:26-cv-01529 (N.D. Cal. Feb. 20, 2026), Dkt. No. 1; *Yee v. Snap, Inc.*, No. 3:26-cv-01528 (N.D. Cal. Feb. 20, 2026), Dkt No. 1; *Babbini v. Reddit, Inc.*, No. 3:26-cv-01532 (N.D. Cal. Feb. 20, 2026), Dkt No. 1. Two of those cases were dismissed following their judicial assignments, then re-filed in other districts.

## II. RELEVANT BACKGROUND

Defendants offer two tools to help advertisers optimize the performance of their ads on the TikTok platform: the Pixel and Events API ("EAPI"; together, "Tools"). These Tools allow advertisers to send browsing information to Defendants—information like URLs, certain cookie information, and sometimes hashed email addresses and phone numbers. ¶¶ 35-87.[2] Advertisers choose to use the Tools—they are optional and not necessary to use to advertise on TikTok. ¶ 28.

To access the Tools, advertisers must agree to the TikTok Business Products (Data) Terms. *See* Ex. 1 (the "Data Terms").[3] These Terms require advertisers to be transparent with users and obtain consent where required, and forbid advertisers to share sensitive information with Defendants:

> You must only share with us or enable us to access Business Products Data in a manner that is transparent and lawful. You (and any agency or data provider that you may use) must therefore have provided all necessary transparency notices, and have all necessary rights, permissions and lawful bases (including consent, if and where required) required by applicable laws in order to share with us or enable us to access Business Products Data…
>
> You will not share with us or enable us to access Business Products Data that you know or ought reasonably to know … includes health or financial information, or other categories of sensitive information.

Ex. 1 §§ 2.5, 2.8.

Plaintiff claims—as other plaintiffs have previously asserted—that, by providing the Tools and receiving data from them, Defendants committed numerous privacy violations against anyone who visited a website that used the Tools. ¶¶ 161-169. She also claims that Defendants create "profiles" of every person—regardless of whether they use TikTok—to sell to advertisers. ¶¶ 102-131.

Notably, Plaintiff's allegations regarding her own data are largely nonspecific. For instance, she claims that Defendants received her "email address and the detailed URLs regarding each property she viewed on the Zillow website." ¶ 154. And she further claims that Defendants made an advertising "profile" of her. ¶ 156. But Plaintiff does not allege ***a single URL*** that she visited from which Defendants received her data. ¶¶ 152-160. Nor does she allege what, if any, data Defendants possess that might be used to construct a profile of her, or why or how Defendants would create a profile for

---

[2] "¶ __" and "¶¶ __" refers to paragraph(s) of the Class Action Complaint, Dkt. No. 1.

[3] "Ex. __" refers to the exhibits attached to the Kohan Declaration, filed concurrently herewith.

her even though she does not have a TikTok account. *Id.* Nonetheless, Plaintiff brings six claims: (1) intrusion upon seclusion; (2) violation of § 631(a) of CIPA; (3) violation of § 632 of CIPA; (4) violation of § 638.51(a) of CIPA; (5) violation of the UCL; and (6) violation of ECPA. ¶¶ 170-252.

## III. LEGAL STANDARD

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

Because "a named plaintiff who fails to state a claim cannot pursue the claim on behalf of a class," Plaintiff must allege facts that support a claim ***as to herself*** and cannot rely on classwide allegations to survive a motion to dismiss. *Burroughs v. Northrop Grumman Corp.*, 2000 U.S. Dist. LEXIS 23668, at *40 (C.D. Cal. Oct. 16, 2000) (citing *Nelsen v. King Cnty.*, 895 F.2d 1248, 1250 (9th Cir. 1990)), *aff'd*, 32 F. App'x 360 (9th Cir. 2002).

## IV. PLAINTIFF'S PRIVACY CLAIMS FAIL

Plaintiff's undeveloped allegations of some undefined intrusion do not meet the "high bar" for establishing a privacy claim under California law. *See In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019). "Whether a legally recognized privacy interest exists is a question of law to be decided by the court." *Sanchez-Scott v. Alza Pharma.* 86 Cal. App. 4th 365, 372-73 (2001). Plaintiff must plausibly allege that Defendants intruded (1) "into a place, conversation, or matter as to which the plaintiff has a ***reasonable expectation of privacy***[,]" (2) ***intentionally***, and (3) "in a manner ***highly offensive*** to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) (emphases added). Plaintiff's privacy claims can and should "be adjudicated as a matter of law" at the pleading stage. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (cleaned up); *see also Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024).

### A. California's High Bar for Privacy Claims

California's high bar for privacy claims exists because "[n]o community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). "Actionable

invasions of privacy must be sufficiently serious … to constitute an egregious breach of the social norms underlying the privacy right." *Id.*

Over decades of the internet operating based on the collection and sharing of data, California law has made clear that privacy claims based on internet tracking are disfavored. A "presumption" has developed in California courts "that Internet communications do not reasonably give rise to [an] expectation" of privacy. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019); *accord People v. Nakai*, 183 Cal. App. 4th 499, 517-18 (2010) (explaining how a defendant's online communications were not private). "Given the inherent nature of the internet, a number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that space." *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) (collecting cases), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025); *accord State v. Mixton*, 250 Ariz. 282, 293 (2021) ("[I]n this age of information sharing and inter-connectivity, most of us understand that what we do on the internet is not completely private") (cleaned up). Further, even where consumers might "have a reasonable expectation of privacy in general app usage data, that does not mean that a reasonable consumer would be particularly shocked or offended to discover that [a company] is in fact collecting" their "general app usage data," even if it included the "user's religion, political affiliation, or sexual preference"—information far more personal than the Zillow browsing history alleged by Plaintiff here.[4] *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022).

California's nuanced "*social norms* underlying the privacy right" as applied to the internet, *see Low*, 900 F. Supp. 2d at 1025, are not merely discussed in opinions but embodied in laws passed by the Legislature and voters. For instance, the electorate's adoption of an amendment to the California Consumer Protection Act ("CCPA") reflects its understanding that tools that send browsing data to third parties do not egregiously breach social norms, but instead are part of a tradeoff wherein "[s]ome companies that do not charge consumers a fee, subsidize these services by monetizing consumers' personal information." *See* Text of Proposed Laws, Cal. Gen. Election, at 43 (Nov. 3, 2020) (Ex. 4). Instead of banning this conduct, California voters enacted an opt-out system that allows for it. The

---

[4] This inoffensiveness of tracking website browsing is underscored by the use of Google Analytics —which is similar to the Pixel and EAPI—to track visitors on what appears to be Plaintiff's personal website, https://www.lisatsering.me. *See* Kohan Decl. ¶¶ 4-6, Ex. 3.

Legislature then reinforced this opt-out regime twice over with the Delete Act in 2023 and the Opt Me Out Act in 2025. Legis. Counsel's Digest, SB 362 (Oct. 12, 2023) (Ex. 5) (requiring, *inter alia*, data brokers to delete a user's data on an ongoing basis after receiving a deletion request); Legis. Counsel's Digest, AB 566 (Oct. 9, 2025) (Ex. 6) (requiring, *inter alia*, web browsers to offer users an easy option to pursue opt-out preferences). Plaintiff "ask[s] the Court to characterize an entire industry as founded on tortious conduct," but the Court "cannot sanction that result," *see Hubbard*, 2024 WL 3302066 at *7, without rejecting Californians' own assessment of social norms regarding online data collection.

### B. The Complaint Lacks Factual Allegations Sufficient to Establish the Three Key Elements of a California Privacy Claim.

Plaintiff's allegations do not plausibly satisfy any of the three elements of a privacy claim. Beyond conclusory allegations, the Complaint fails to articulate what, if any, sensitive data gave rise to a reasonable expectation of privacy, how Defendants acted with the required intentionality (*e.g.*, ¶¶ 170-181), or why Defendants' alleged conduct would egregiously violate social norms.

#### 1. No Reasonable Expectation of Privacy

Plaintiff cannot establish a reasonable expectation of privacy because the Complaint makes no specific allegations to support its conclusion that Defendants received her "*sensitive* and *confidential* information," as is required under "well-established California law." *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014) (cleaned up). Put otherwise, "[Plaintiff] identifies no embarrassing, invasive, or otherwise private information collected by [Defendants]." *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). "The context-specific nature of the inquiry has been emphasized repeatedly by the California Supreme Court." *See Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *3 (N.D. Cal. Dec. 27, 2019) (Donato, J.) (citing *Hernandez*, 47 Cal. 4th at 286). Without any specifics, the Court simply cannot "undertake the context-specific inquiry into the plausibility of the privacy expectation or the offensiveness of the intrusion," *id.*, which means Plaintiff has not stated a claim.[5]

---

[5] The same is true for her CIPA § 632 claim. *See Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *7 (C.D. Cal. Dec. 24, 2024) ("Courts have recognized similarities in the analysis of whether a reasonable expectation of privacy exists for purposes of California privacy claims and whether a conversation is confidential under CIPA.").

Plaintiff never explains ***what*** "wide variety of sensitive information on Plaintiff" Defendants allegedly gathered on sites—such as Zillow.com, wyndhamhotels.com, and Redfin.com—allegedly visited by Plaintiff. *See* ¶ 152. This defect is fatal because "the nature of collection and the sensitivity of the collected information are important" to establishing a reasonable expectation of privacy. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020). It is not enough for Plaintiff to repeat the conclusory word "sensitive" (*see* ¶¶ 174, 201, 206); this is "simply a bare recitation of [an] element[] of a privacy claim." *See Yahoo*, 7 F. Supp. 3d at 1041. Plaintiff must instead allege what "communications, identities, personal activities, and other data" are at issue (¶ 176), so as to ***show*** they are sensitive. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023) (dismissing privacy claims for failure to allege "what information, precisely, Plaintiffs shared with [Defendant]"), *vacated for lack of subject matter jurisdiction*, 2024 WL 1184702 (S.D. Cal. Mar. 18, 2024). Nor can Plaintiff rely on allegations about Defendants' conduct generally or toward other consumers (¶¶ 29, 70, 132), to "factually explain [her] ***personal***" data-collection and injury from the alleged conduct.[6] *See Cousin*, 681 F. Supp. 3d at 1123 (emphasis added); *accord Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1178-79 (N.D. Cal. 2025) ("[A] plaintiff must identify the 'specific personal information' she disclosed that implicates a protectable privacy interest." (citation omitted)).

The closest Plaintiff comes to providing specificity—alleging that "TikTok intercepted [her] email address and the detailed URLs regarding each property she viewed on the Zillow website" (¶ 154)—is insufficient to support a privacy claim. Plaintiff does not allege that there was anything sensitive about the real estate she was browsing and, regardless, "[t]he disclosure of mere contact information, such as names and addresses, does not unduly interfere with one's right to privacy." *Cabral v. Supple, LLC*, 2012 WL 12895825, at *3 (C.D. Cal. Oct. 3, 2012); *see also Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (Donato, J.) ("[T]here is no legally protected privacy interest in IP addresses."). Similarly, alleging the disclosure of a "numeric code associated with a user and the URL of the … page viewed" does "not meet the standard set by California courts" for a privacy claim. *See Low*, 900 F. Supp. 2d at 1025. At most, Plaintiff's "factual allegations

---

[6] While the Complaint includes URLs that Defendants' tools ***can*** allegedly collect (*see* ¶¶ 137, 147), there is no allegation that ***Plaintiff herself*** visited those URLs.

show only that she used [a] website, but not how she used it or what her visits revealed about" her sensitive information. *See Wright v. TrueCare Prop. Holdings, LLC*, 2025 WL 3248749, at *4 (S.D. Cal. Nov. 21, 2025) (dismissing intrusion claim for lack of "egregious" conduct).

**2. No Intentional Intrusion**

Plaintiff also has not plausibly alleged that Defendants ***intended*** to intrude on sensitive, personal information. *See, e.g.*, *Briskin v. Shopify Inc.*, 2026 WL 161441, at *4 (N.D. Cal. Jan. 21, 2026) (dismissing intrusion claim "because there is no allegation that Shopify's conduct was willful or intentional"). Defendants expressly ***prohibit*** third-party partners from using the Tools to share with them any "health or financial information, or other categories of sensitive information," under the Data Terms. Ex. 2 § 2.8. Against that policy, Plaintiff's allegations must plausibly show that Defendants "purposefully and deliberately" had advertisers deploy the Pixel and EAPI in such a way as to gather Plaintiff's sensitive data, rather than such collection happening "as a result of accident or mistake." *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024) (cleaned up). The Complaint's conclusory refrain that "Defendants intentionally invaded Plaintiff's … privacy rights" (¶¶ 175, 194, 244) is, again, "simply a bare recitation of [an] element[] of a privacy claim," *see Yahoo*, 7 F. Supp. 3d at 1041, and not enough to plausibly ***show*** that element. *See Doe*, 741 F. Supp. 3d at 840 (dismissing intrusion claim where "Google purposefully acted so as *not* to receive any personal health information"); *Briskin*, 2026 WL 161441, at *5 ("Shopify's policies required merchants to obtain consent for Shopify's access," and regardless whether a merchant obtained proper consent or not, "Shopify's 'intent' is the same in both scenarios.").

**3. Any Intrusion Was Not Highly Offensive**

Finally, Plaintiff does not come close to establishing that the alleged intrusion was so highly offensive as "to constitute an egregious breach of the social norms underlying the privacy right." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011). The "highly offensive" requirement is "an indispensable part of the privacy analysis." *Hernandez*, 47 Cal. 4th at 295. "Plaintiffs must show more than an intrusion upon reasonable privacy expectations. Actionable invasions of privacy also must be 'highly offensive' to a reasonable person, and 'sufficiently serious' and unwarranted as to constitute an 'egregious breach of the social norms.'" *Id.* (citations omitted).

As an initial matter, as with the first requirement, Plaintiff's lack of specific allegations about her own data means she cannot establish a highly offensive intrusion. *See Hammerling*, 615 F. Supp. 3d at 1091. But even at a general level, as Plaintiff knows from the recent dismissal of her similar suit against Meta, Defendants' alleged "data collection and disclosure to third parties" constitute "routine commercial behavior," which "[c]ourts in this district have held … is not a 'highly offensive' intrusion of privacy." *See Tsering*, 2026 WL 89320, at *7 (citations omitted). In that suit—brought by the same firm—the court rightly held that "there is no additional aspect of [Defendants'] data collection in this case suggesting that [Defendants were] intentionally engaged in a secret or deceptive, and thus highly offensive, intrusion." *See id.* (granting motion to dismiss). To the contrary, there are "multiple cases holding that the collection and disclosure of a user's browsing history and personal information on a public website is 'routine commercial behavior' and not 'highly offensive.'" *Cousin*, 681 F. Supp. 3d at 1126. Plaintiff's conclusory allegations hinge on Defendants "engag[ing] in widespread data collection and interception of Plaintiff's … internet and app activity" (¶ 178), but even if these allegations were sufficiently pleaded, they fail to state an actionable privacy claim. *See, e.g.*, *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of plaintiffs' "personal data" and "geolocation information" was not "an egregious breach of social norms").

### 4. Plaintiff Cannot Shoehorn this Case into *In re Facebook*

Plaintiff's allegation that Defendants "create comprehensive profiles based on this online and offline data" (¶ 178), is insufficient to jam Defendants' routine data practices into the deceptive accumulation of cradle-to-grave data deemed to state a claim in *In re Facebook*. The allegations there were that Facebook—despite "affirmatively stat[ing] that logged-out user data would not be collected" and thus "set[ting] an expectation of privacy"—secretly tracked logged-out users' "sensitive browsing histories and habits" across "seven million websites" and correlated that browsing history with their personal Facebook accounts to create "highly personalized" "cradle-to-grave profile[s]" of all these users. 956 F.3d at 599, 602-04. The allegations here fall short of those allegations as to all three requirements of a privacy claim. *See* ¶¶ 40-41, 129, 178.

The Complaint is missing the "critical fact" from *In re Facebook*: "that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect

it anyway." 956 F.3d at 603. In fact, Plaintiff alleges the opposite: she admits that TikTok's Privacy Policy "highlights that its 'partners share information with us about you … such as your activities on other websites and apps or in stores" and "explains that [TikTok] collects 'identifiers for advertising purposes.'" ¶¶ 38, 63 & nn.17, 42. Given such disclosures, a user has "no reasonable expectation of privacy in that data." *See Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024). And Plaintiff has not alleged that Defendants contravened the disclosures in a highly offensive manner.

Further, Plaintiff has not plausibly alleged that, as in *In re Facebook*, Defendants collected a "comprehensive browsing history of an individual"—a "cradle-to-grave profile"—"no matter how sensitive the websites visited." *See* 956 F.3d at 599, 603. The sites Plaintiff allegedly visited ("Zillow.com, wyndhamhotels.com, Healthline.com, Hertz.com, Redfin.com and Hrblock.com") are on their face not sensitive, and she provides no allegations to suggest otherwise. *See* ¶ 152. And because Plaintiff allegedly "does not have a TikTok account," ¶ 5, Defendants could not do what Facebook did: correlate the user's on-platform activity with off-platform browsing to create a cradle-to-grave profile.

Finally, despite the conclusory assertions that Defendants used information from the Pixel to "de-anonymize" Plaintiff (¶ 156), "it is not clear" from ***specific*** allegations that Defendants actually did so. *See Cousin*, 681 F. Supp. 3d at 1126. Indeed, in *Griffith*, years of discovery showed Defendants had ***not*** done so. 2024 WL 5279224, at *8. This is dispositive, as "a person does not have a reasonable expectation of privacy over information that cannot even be connected to her." *Sanchez v. L.A. Dep't of Transp.*, 2021 WL 1220690, at *3 (C.D. Cal. Feb. 23, 2021), *aff'd*, 39 F.4th 548 (9th Cir. 2022).

## V. PLAINTIFF'S WIRETAPPING CLAIMS FAIL

Plaintiff's wiretapping claims fail because she does not allege that Defendants intercepted the contents of a communication while in transit, or that Defendants read or attempted to read those contents. Nor does the Complaint allege intent. The wiretapping claims are addressed together because "[t]he analysis for a violation of CIPA is the same as that under [ECPA]." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (citations omitted).

### A. Inadequate Allegations Regard the "Contents" of Communications

Plaintiff does not adequately allege that the data collected constituted the "contents" of a communication, as opposed to mere "record information." "Contents" refer to the actual substance of

the communication—such as the body of an email. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). "Record information" refers to external, non-substantive characteristics—like the device and browser used (user agent), the web page a visitor came from (referrer URL), and the session (Pixel session ID). Record information is ***not*** "contents." *See id.* at 1105-06.

Plaintiff's Complaint focuses on Defendants' collection of URLs, but because a URL will in most circumstances constitute merely "record information," more specifics are required. The Complaint alleges that full-string URL addresses ***can*** reveal the contents of communications (*i.e.*, more than merely what website was visited), ***if*** the website owner sets up those addresses to include search terms used by a visitor. ¶¶ 88-92. But it is "not enough" for Plaintiff to "allege the ***potential*** capabilities" of the Pixel; she must allege that the defendant "***in fact***, harnessed the capabilities she describes, and it had the result of capturing the contents of specific communications." *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 69 (W.D. Pa. 2023) (emphases added), *aff'd*, 148 F.4th 153 (3d Cir. 2025). "Without allegations as to what these Plaintiffs searched, Plaintiffs fail to plausibly allege that Defendant intercepted the contents of their communications." *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025) (collecting cases).

Here, the Complaint does not allege any URL visited ***by Plaintiff*** that disclosed the contents of her communication. Although it provides two examples of purported URL disclosures, one from Western Union (¶ 147) and another from Zillow (¶ 137), neither URL is alleged to have been visited by Plaintiff. Both claims fail for that reason alone. *See, e.g.*, *Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) ("[P]laintiffs do not specifically allege that *their* communications were intercepted by any third parties"); *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) ("Notably, Plaintiff's FAC provides examples of the types of 'full-string URL' allegedly intercepted by Meta, but Plaintiff does not allege she conducted the searches or visited the webpages provided in the examples").[7]

---

[7] There are no allegations that any of the six websites used full-string URL addresses ***on the pages Plaintiff visited***; that those URLs include any search terms; or that Plaintiff entered any search terms on these pages. Without these allegations, the URLs are not "contents." *Compare Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *3 (N.D. Cal. Aug. 22, 2023) (detailed examples of full-string URLs revealing contents), *with Cook*, 689 F. Supp. 3d at 69 (allegations about "URLs" were insufficient because they lacked "critical necessary details").

For the same reasons, the Complaint fails to plausibly allege that Defendants ***intentionally*** intercepted the contents of Plaintiff's communications. There are no allegations that Defendants directed these advertisers to configure their websites to use content-containing URLs, rather than content-obfuscating URLs, or even that Defendants were aware of that configuration. Absent such allegations, receipt of content-containing URLs would be accidental or incidental, not intentional. *See Doe*, 741 F. Supp. 3d at 840; *see also supra* Section IV.B.2.

**B. Inadequate Allegations Regarding Interception "in Transit"**

Plaintiff fails to plausibly allege that Defendants acquired the contents of communications ***during transmission***, rather than from electronic storage after transmission. *See de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *7 (N.D. Cal. Dec. 22, 2025). Under *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002), even if the data is sent to Defendants "within milliseconds" of it being received by the advertiser's website, that is not interception "in transit." *Griffith*, 2024 WL 5279224, at *10. Thus, a plaintiff must allege facts regarding "how the software code embedded on [the relevant] website works." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024). A conclusory allegation of real-time interception is insufficient "without specific facts about … when or how the interception took place." *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *10 (C.D. Cal. Nov. 27, 2023).

Here, the Complaint is completely devoid of any allegation that the Pixel transmits data to Defendants while the user's communication with the website is "in transit." Plaintiff makes claims about ***what*** data TikTok receives from the Pixel, not about ***when*** and ***how*** that data is sent to TikTok. She offers only the conclusion that the interception occurs "in transit," ¶ 191, but that is not enough, *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (plaintiff "fail[ed] to explain how the software works or how the interception occurs"). Similarly, Plaintiff has failed to allege that EAPI intercepts communications in transit.[8] The Complaint lacks any facts explaining how EAPI works. This is fatal to her interception claims. *See Smith v. Rack Room Shoes, Inc.*, 2026 WL 183852, at *3 (N.D.

---

[8] Nor should Plaintiff add such an allegation without a good-faith basis for doing so. In *Griffith*, after extensive discovery, the court found that EAPI does not intercept anything "in transit" because the data is taken from the website's storage, not from the user's communication. 2024 WL 5279224, at *10.

Cal. Jan. 23, 2026) ("[p]laintiffs fail[ed] to state a section 631 claim" because "there [was] no information about how soon this forwarding occurs or whether it is contemporaneous with the receipt").

### C. Inadequate Allegations Regarding "Reading" the Contents

Plaintiff's wiretapping claim fails for the further reason that she has not plausibly alleged that TikTok ***read or attempted to read*** the contents of a communication while in transit. *See Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1116 (N.D. Cal. 2025). Reading requires "some effort at understanding the substantive meaning" of the communication. *Id*. at 1117. "[I]t would stretch CIPA's statutory language too far to interpret 'while ... in transit' to encompass any hypothetical future attempt to read or understand the meaning of a communication." *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *6 (N.D. Cal. Apr. 17, 2025).

Far from plausibly alleging in-transit reading of the contents of her communications, the Complaint seems to allege only indiscriminate collection of communications for future use (i.e., the assembly of a "profile"). ¶¶ 152-158. These allegations "suggest that [TikTok] would analyze Plaintiff['s] communications ***after*** it collects them, not as it collects them." *Lewis*, 2025 WL 3687546, at *12 (emphasis added). "That [TikTok] processes the data once it is on its servers suggests the contents are not 'read' or 'learned' while in transit." *Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *6 (N.D. Cal. Apr. 21, 2026).

## VI. PLAINTIFF'S SECTION 638.51 CLAIM FAILS

As a threshold matter, Plaintiff pleads herself out of a pen register claim by alleging that Defendants' tools are capable of collecting the contents of communications. *See* ¶¶ 182-208 (claiming Defendants committed wiretapping by capturing contents of communications). By definition, a pen register device "[can]not [capture] the contents of a communication." Cal. Penal Code § 638.50(b). For that reason, two courts have already rightly held that the Pixel is not a pen register device. *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) ("[T]he TikTok software is not a trap and trace device and § 638.50 does not apply"); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 851-52 (N.D. Cal. 2025) (same).[9]

[9] Plaintiff does not plead the pen register and wiretapping claims in the alternative. *See In re Apple Data Priv. Litig.*, 2026 WL 146025, at *5 (N.D. Cal. Jan. 20, 2026) (pen register claim fails when

*(Cont'd on next page)*

Regardless, Plaintiff cannot allege a § 638.51 claim because—properly construed—the provision's scope should not be extended to internet communications. This is apparent from both the text of § 638.51 and the context of its surrounding subsections. *See Turrieta v. Lyft, Inc.*, 16 Cal. 5th 664, 711 (2024) (text must be interpreted consistent with "the statutory scheme as a whole"). Neither § 638.51 nor § 638.50—which offers the definitions used in § 638.51—says anything about the internet. Neither do § 638.52 nor § 638.53; instead, § 638.52 specifically refers to "telephone line[s]" and "telephone number[s]." Cal. Penal Code § 638.52(c), (d)(1), (d)(3). And the People and Legislature of California have—over decades[10]—instituted an opt-out regime that cannot be coherently squared with Plaintiff's reading of § 638.51, which would compel an opt-in regime. "[W]e construe every statute with reference to the whole system of law of which it is part, so that all may be harmonized and anomalies avoided." *Hohenshelt v. Super. Ct.*, 18 Cal. 5th 310, 332 (2025) (citation omitted). It would lead to "absurd results" if the carefully calibrated opt-out regime designed to address the internet were overridden by an overreading of CIPA. A business could provide robust disclosures about the information collected and a conspicuous opportunity to opt out of the data collection—in perfect compliance with the CCPA—only to then run afoul CIPA and be liable for $5,000 per violation.

---

plaintiff fails to allege alternative theory of recovery in tandem with other CIPA claims). Nor could she, because the issue is not alternative ***legal*** theories, but that Plaintiff could not allege both that (i) the Tools can capture contents and (ii) the Tools do not capture contents. To be clear, both Tools conceivably ***can*** do so (which defeats the pen register claim), but Plaintiff does not allege that they ***have*** captured contents of her communications in transit (which defeats the wiretapping claims).

[10] The 2003 California Online Privacy Protection Act, for example, did not require users to affirmatively opt in to online data collection practices, and instead required robust disclosures about what data was being collected. Cal. Bus. & Prof. Code §§ 22575-22579. The 2018 CCPA regulates the internet as part of the nation's "first … comprehensive consumer privacy law." Marjorie Richter, *The California Consumer Privacy Act (CCPA)—Legal glossary*, Thomson Reuters (Dec. 15, 2025), available at https://legal.thomsonreuters.com/blog/the-california-consumer-privacy-act/. Under the CCPA, businesses are required to provide (1) robust notice to consumers of what data is collected; and (2) an opportunity to opt out of data collection and sale. Cal Civ. Code § 1798.120. The 2020 California Privacy Rights Act ("CPRA"), approved by the voters, placed consumers "on a more equal footing when negotiating with businesses" by, among other things, entitling them "to a clear explanation of the uses of their personal information." Text of Proposed Laws, Cal. Gen. Election, at 43 (Nov. 3, 2020) (Ex. 4). In 2023, the Governor signed the Delete Act. Legis. Counsel's Digest, SB 362 (Oct. 12, 2023) (Ex. 5). This law requires data brokers to give more disclosures about their requests received under the CCPA and imposes an ongoing data deletion obligation once a user has requested such data deletion. In 2025, the Governor signed the Opt Me Out Act. Legis. Counsel's Digest, AB 566 (Oct. 9, 2025) (Ex. 6). This law requires browsers to provide consumers with an easy-to-use tool to signal privacy preferences, including a decision to opt-out of sales of data. *Id.*

While many courts have extended CIPA and § 638.51 to the internet,[11] no precedent compels that. Defendants urge the Court to look at the issue afresh and follow the persuasive reasoning of Judge Bybee, who would not apply CIPA to the internet because the CCPA "explicitly provides recourse for internet privacy violations," *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring in part), and Judge Chhabria, who recognized the absurdity of holding businesses criminally liable for using standard web tools, *Eating Recovery*, 806 F. Supp. 3d at 1112.

## VII. PLAINTIFF'S UCL CLAIM FAILS

Plaintiff's UCL claim fails because she does not allege that she "has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Plaintiff alleges only that Defendants sold her data, ¶ 227, but "the taking and use of an individual's personal information without consent is not in any obvious way *itself* a loss of, or injury to, that individual's money or property." *Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378, at *5 (N.D. Cal. Mar. 17, 2025) (Donato, J.). Plaintiff has failed to allege an "inability to transact in the data market or a diminution in the value of [her] personal data because of [Defendants'] actions." *Id.*; *accord Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 977 (C.D. Cal. 2023) (plaintiff "[did] not allege specific facts showing that she could have sold the limited data collected …, that she has ever attempted or intended to sell her data, or that Defendants' collection of that data … impeded her ability to sell her data"). This dooms her UCL claim.

## VIII. CONCLUSION

For all these reasons, Defendants respectfully request that the Court dismiss the Complaint.

Dated: May 11, 2026

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

By: */s/ Mark R. Yohalem*
Mark R. Yohalem

*Attorneys for Defendants*
*ByteDance Inc., TikTok Inc., &*
*TikTok USDS Joint Venture LLC*

---

[11] Defendants understand that this Court recently considered, and rejected, this argument. *See Echeverria-Corzan v. Torrid LLC*, No. 3:25-cv-06926-JD, Dkt. No. 35 (N.D. Cal. Feb. 26, 2026). However, the Second Appellate District of California's Court of Appeal will soon consider whether § 638.51 applies to internet communications. *See Variety Media, LLC v. Super. Ct.*, No. B350578 (Cal. Ct. App.). Should the Court of Appeal reject the theory of liability pressed by Plaintiff, Defendants would respectfully request that this Court reconsider its interpretation.