VICTOR JIH, SBN 186515
WILSON SONSINI GOODRICH
& ROSATI, P.C.
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329
vjih@wsgr.com

MARK R. YOHALEM, SBN 243596
WILSON SONSINI GOODRICH
& ROSATI, P.C.
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
mark.yohalem@wsgr.com

THOMAS R. WAKEFIELD, SBN 330121
WILSON SONSINI GOODRICH
& ROSATI, P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (424) 446-6900
twakefield@wsgr.com

ERIC T. KOHAN, SBN 325076
WILSON SONSINI GOODRICH
& ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
ekohan@wsgr.com

*Attorneys for Defendants*
*ByteDance Inc., TikTok Inc., &*
*TikTok USDS Joint Venture LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

LISA TSERING, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BYTEDANCE INC., TIKTOK, INC., and TIKTOK USDS JOINT VENTURE LLC,

Defendants.

Case No. 3:26-cv-01536-JD

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**

Judge: Hon. James Donato
Hearing Date: July 23, 2026
Hearing Time: 10:00 a.m.
Courtroom: 11

# TABLE OF CONTENTS

**Page**


NOTICE OF MOTION TO DISMISS ........ 1

STATEMENT OF THE ISSUES ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. RELEVANT BACKGROUND ........ 3

III. LEGAL STANDARD ........ 4

IV. PLAINTIFF'S PRIVACY CLAIMS FAIL ........ 4

A. California's High Bar for Privacy Claims ........ 5

B. The FAC Lacks Factual Allegations Sufficient to Establish the Three Key Elements of a California Privacy Claim ........ 6

1. No Reasonable Expectation of Privacy ........ 6

2. No Intentional Intrusion ........ 8

3. Any Intrusion Was Not Highly Offensive ........ 9

4. Plaintiff Cannot Shoehorn this Case into *In re Facebook* ........ 9

V. PLAINTIFF'S WIRETAPPING CLAIMS FAIL ........ 11

A. Inadequate Allegations Regard the "Contents" of Communications ........ 11

B. Inadequate Allegations Regarding Interception "in Transit" ........ 12

C. Inadequate Allegations Regarding "Reading" the Contents ........ 13

VI. PLAINTIFF'S SECTION 638.51 CLAIM FAILS ........ 13

VII. THE COURT SHOULD DENY LEAVE TO AMEND ........ 15

VIII. CONCLUSION ........ 15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ascon Props., Inc. v. Mobil Oil Co.*,
866 F.2d 1149 (9th Cir. 1989)....................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*Babbini v. Reddit, Inc.*,
No. 3:26-cv-01532 (N.D. Cal.)....................2

*Barth v. Kernan*,
2018 WL 4300532 (C.D. Cal. Sept. 10, 2018)....................15

*Briskin v. Shopify Inc.*,
2026 WL 161441 (N.D. Cal. Jan. 21, 2026)....................8

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....................11

*Burroughs v. Northrop Grumman Corp.*,
2000 U.S. Dist. LEXIS 23668 (C.D. Cal. Oct. 16, 2000)....................4

*Cabral v. Supple, LLC*,
2012 WL 12895825 (C.D. Cal. Oct. 3, 2012)....................8

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024)....................13

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023),
*aff'd*, 148 F.4th 153 (3d Cir. 2025)....................11, 12

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023), *vacated for lack of subject matter jurisdiction*, 2024 WL 1184702 (S.D. Cal. Mar. 18, 2024)....................7, 9, 10

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025)....................12

*Dellasala v. Samba TV, Inc.*,
2026 WL 1138358 (N.D. Cal. Apr. 21, 2026)....................13

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)....................8

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025)....................13, 15

*Echeverria-Corzan v. Torrid LLC*,
No. 3:25-cv-06926-JD, Dkt. No. 35 (N.D. Cal. Feb. 26, 2026)....................15

*Epstein v. Wash. Energy Co.*,
83 F.3d 1136 (9th Cir. 1996) ........ 4

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ........ 9

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ........ 12

*Griffith v. TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) ........ 7, 10, 12, 13

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) ........ 15

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ........ 10

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 6, 9

*Hansen v. W. Progressive, LLC*,
2017 WL 2722014 (E.D. Cal. June 23, 2017) ........ 15

*Heeger v. Facebook, Inc.*,
2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ........ 7

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 8

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ........ 12

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ........ 5, 7, 9

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ........ 5

*Hohenshelt v. Super. Ct.*,
18 Cal. 5th 310 (2025) ........ 14

*In re Apple Data Priv. Litig.*,
2026 WL 146025 (N.D. Cal. Jan. 20, 2026) ........ 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 7, 10

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ........ 4

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 9

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 7, 8

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)....................11

*J.S. v. Spring Fertility Holdings, LLC*,
2026 WL 1483490 (N.D. Cal. May 27, 2026)....................12

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025)....................7

*King v. Hard Rock Café Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025)....................12

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025)....................14

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)....................12

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025)....................11, 13

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)....................5, 6, 8

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025)....................14

*Nelsen v. King Cnty.*,
895 F.2d 1248 (9th Cir. 1990), *aff'd*, 32 F. App'x 360 (9th Cir. 2002)....................4

*Ortiz v. Foris Dax, Inc.*,
2026 WL 1430720 (N.D. Cal. May 21, 2026)....................9, 11

*People v. Nakai*,
183 Cal. App. 4th 499 (2010)....................5

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)....................7

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................5

*Sanchez v. L.A. Dep't of Transp.*,
2021 WL 1220690 (C.D. Cal. Feb. 23, 2021),
*aff'd*, 39 F.4th 548 (9th Cir. 2022)....................10

*Sanchez-Scott v. Alza Pharma.*
86 Cal. App. 4th 365 (2001)....................5

*Smith v. Rack Room Shoes, Inc.*,
2026 WL 183852 (N.D. Cal. Jan. 23, 2026)....................13

*State v. Mixton*,
250 Ariz. 282 (2021)....................5

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024),
*aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025)........5

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025)........13

*Tsering v. Meta Platforms, Inc.*,
2026 WL 1433958 (N.D. Cal. May 21, 2026)........2

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026)........9

*Turrieta v. Lyft, Inc.*,
16 Cal. 5th 664 (2024)........14

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023)........12

*Variety Media, LLC v. Super. Ct.*,
No. B350578 (Cal. Ct. App.)........15

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025)........12

*Wright v. TrueCare Prop. Holdings, LLC*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025)........8

*Yee v. Snap, Inc.*,
No. 3:26-cv-01528 (N.D. Cal.)........2

*Zhu v. Pinterest, Inc.*,
No. 3:26-cv-01529 (N.D. Cal.)........2

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)........15

## STATUTES

18 U.S.C. § 2510 *et seq.* ("ECPA")........1, 2, 4, 11

Cal. Bus. & Prof. Code § 22575 *et seq.* (Cal. Online Privacy Protection Act")........14

Cal Civ. Code § 1798.100 *et seq.* ("CCPA")........6, 14, 15

Cal Civ. Code § 1798.120 *et seq*. (Delete Act in 2023)........6, 14

Cal Civ. Code § 1798.136 *et seq*. (Opt-Me Out Act in 2025)........6, 14

Cal. Penal Code § 632 ("CIPA")........2, 4, 7

Cal. Penal Code § 638.50........14

Cal. Penal Code § 638.51........*passim*

Cal. Penal Code § 638.52........14

Cal. Penal Code § 638.53 ....................................................................................................14

**RULES**

Federal Rules of Civil Procedure 12(b)(6) ....................................................................................1

## NOTICE OF MOTION TO DISMISS

**PLEASE TAKE NOTICE** that, on July 23, 2026, at 10:00 a.m., or as soon thereafter as may be heard, Defendants ByteDance Inc., TikTok Inc., and TikTok USDS Joint Venture LLC will, and now do, move to dismiss the Class Action Complaint ("Complaint") under Federal Rules of Civil Procedure 12(b)(6). This Motion is based on this Notice, the accompanying Memorandum, the Request for Judicial Notice, and the Declaration of Eric T. Kohan ("Kohan Decl.") and its exhibits, as well as all the records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented and considered by the Court.

## STATEMENT OF THE ISSUES

1. Whether Plaintiff states claims for intrusion upon seclusion and violation of § 632(a) of the California Invasion of Privacy Act ("CIPA") without specifying the data she claims Defendants took from her, explaining how Defendants took such data intentionally, or alleging that Defendants engaged in conduct that is highly offensive to a reasonable person.

2. Whether Plaintiff states claims for violations of § 631(a) of CIPA or the Electronic Communications Privacy Act ("ECPA") without specifying which "contents" of her communications were allegedly intercepted, describing how those contents were intercepted "in transit," or alleging that Defendants read or attempted to read those contents while "in transit."

3. Whether Plaintiff states a claim for a violation of § 638.51 of CIPA despite alleging that the TikTok pixel and its associated cookies (the "Pixel") collect the "contents" of communications, which precludes the Pixel from satisfying the definition of a "pen register," and despite internet communications being outside the scope of § 638.51, given its text and history.

4. Whether Plaintiff should be entitled to leave to amend despite failing to add any substantive allegations supporting her claims that addressed the defects identified by Defendants in their first motion to dismiss.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Despite having been amended in response to Defendants' initial motion to dismiss, the First

Amended Complaint ("FAC") still fails to allege that Defendants violate CIPA or any other law by providing industry-standard tools to advertisers. As Defendants explained in their prior motion, a plaintiff must—at a minimum—allege that ***her*** sensitive data was intentionally taken in a highly offensive manner, or that the defendant read the contents of ***her*** communications with websites while they were in transit. It is not enough to allege that a web pixel or similar tool ***can*** collect sensitive data.

These deficiencies—the lack of specificity regarding the URLs Plaintiff allegedly visited, the data allegedly intercepted, and the timing of any alleged interception—were the focus of Defendant's original motion to dismiss. Those fatal flaws persist in the FAC, which remains abstract and non-specific, re-asserting the same copy-pasted allegations that Plaintiff's counsel has made ***verbatim*** against other companies.[1] These deficiencies are all the more glaring since Plaintiff amended in response to Defendants' motion, but could not address them. The FAC thus fails for the same reasons as its predecessor:

Plaintiff's intrusion and CIPA § 632 claims fail again because she has not plausibly alleged that Defendants received any sensitive data from her. The FAC lacks allegations showing a reasonable expectation of privacy in whatever data was received, that Defendants intentionally invaded her privacy, and that the invasion was highly offensive. The Pixel is an industry-standard tool, and Defendants direct advertisers to be transparent, secure consent, and not send sensitive data.

Plaintiff's wiretapping claims for violations of § 631(a) of CIPA and § 2511 of ECPA likewise fail again. Plaintiff has not alleged that Defendants intercepted any "contents" of her communications. She has not alleged—and cannot allege—facts sufficient to show any contents were taken while "in transit," a strict test in the Ninth Circuit. And she has not plausibly alleged that Defendants "read[], or attempt[ed] to read," her communications while they were in transit.

Finally, Plaintiff again pleads herself out of any claim under § 638.51 of CIPA by alleging that the Pixel can capture the contents of communications. The definition of a pen register explicitly

[1] Tsering's original complaint, and now the FAC, copies entire passages from three other cases contemporaneously filed by her counsel against other providers of similar tools. *See Zhu v. Pinterest, Inc.*, No. 3:26-cv-01529 (N.D. Cal.); *Yee v. Snap, Inc.*, No. 3:26-cv-01528 (N.D. Cal.); *Babbini v. Reddit, Inc.*, No. 3:26-cv-01532 (N.D. Cal.). Two of those cases were dismissed following their judicial assignments then re-filed in other districts. Additionally, Tsering's claims against Meta regarding its Pixel under CIPA § 638.51 and intrusion upon seclusion claims were recently dismissed with prejudice. *Tsering v. Meta Platforms, Inc.*, 2026 WL 1433958 (N.D. Cal. May 21, 2026).

excludes devices that do so. Further, the Court should rule that § 638.51 does not apply to internet communications.

The Court should grant Defendants' concurrently filed motion to transfer, which would obviate the need to reach this Motion. But if it does not transfer, the Court should dismiss the formulaic FAC without leave for further amendment. The flaws identified in this Motion were already identified in Defendants' prior motion, and Plaintiff amended to address them—but could not add the requisite specifics or establish the necessary elements of her claims. Further amendment would thus be futile.

## II. RELEVANT BACKGROUND

Defendants offer two tools to help advertisers optimize ad performance on the TikTok platform: the Pixel and Events API ("EAPI"; together, "Tools"). These Tools allow advertisers to send information to Defendants, such as URLs, certain cookies, and sometimes hashed emails and phone numbers. ¶¶ 36-88.[2] Advertisers choose to use the Tools—they are optional, not required to advertise on TikTok. ¶ 29.

To access the Tools, advertisers must agree to the TikTok Business Products (Data) Terms. *See* Ex. 1 (the "Data Terms").[3] These Terms require advertisers to be transparent with users and obtain consent where required, and forbid sharing sensitive information with Defendants:

> You must only share with us or enable us to access Business Products Data in a manner that is transparent and lawful. You … must therefore have provided all necessary transparency notices, and have all necessary rights, permissions and lawful bases (including consent, if and where required) required by applicable laws in order to share with us or enable us to access [data]…
> You will not share with us or enable us to access Business Products Data that you know or ought reasonably to know … includes health or financial information, or other categories of sensitive information.

Ex. 1 §§ 2.5, 2.8.

Plaintiff claims—as other plaintiffs have claimed—that by providing the Tools and receiving data from them, Defendants committed privacy violations against anyone who visited a website that used the Tools. ¶¶ 160-168. She also claims that Defendants create "profiles" of every person—regardless of whether they use TikTok—to sell to advertisers. ¶¶ 103-132.

---

[2] "¶ __" and "¶¶ __" refer to paragraph(s) of the First Amended Complaint, Dkt. No. 29.

[3] "Ex. __" refers to the exhibits attached to the Kohan Declaration, filed concurrently herewith.

Despite amending her complaint after seeing Defendants' first motion to dismiss,[4] Plaintiff's allegations regarding her own data remain largely nonspecific. For instance, she claims that Defendants received her "email address and the detailed URLs regarding each property she viewed on the Zillow website" (¶ 153) and that Defendants made an advertising "profile" of her (¶ 155). But she still does not allege ***a single URL*** from which Defendants received her data. ¶¶ 151-159. Nor does she allege what, if any, data Defendants possess that might be used to construct a profile of her, or why or how Defendants would create a profile for her even though she does not have a TikTok account. *Id.* Having abandoned her claim under the California Unfair Competition Law ("UCL"), Plaintiff again asserts claims against Defendants for violations of: (1) intrusion upon seclusion; (2) § 631(a) of CIPA; (3) § 632 of CIPA; (4) § 638.51(a) of CIPA; and (5) ECPA. ¶¶ 169-243.

None of these changes addressed the deficiencies in her original complaint. Ex. 7.

## III. LEGAL STANDARD

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Because "a named plaintiff who fails to state a claim cannot pursue the claim on behalf of a class," Plaintiff must allege facts that support a claim ***as to herself*** and cannot rely on classwide allegations to survive a motion to dismiss. *Burroughs v. Northrop Grumman Corp.*, 2000 U.S. Dist. LEXIS 23668, at *40 (C.D. Cal. Oct. 16, 2000) (citing *Nelsen v. King Cnty.*, 895 F.2d 1248, 1250 (9th Cir. 1990)), *aff'd*, 32 F. App'x 360 (9th Cir. 2002).

## IV. PLAINTIFF'S PRIVACY CLAIMS FAIL

Plaintiff's undeveloped allegations do not meet the "high bar" for establishing a privacy claim under California law. *See In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019). "Whether a legally recognized privacy interest exists is a question of law to be decided by the court."

---

[4] On May 11, 2026, Defendants filed a motion to dismiss that detailed several pleading defects with the original Complaint, including that it failed to identify specific URLs that Plaintiff visited, failed to explain what data was collected from Plaintiff, and failed to set out the timing of the purported interception. Dkt. No. 23. Instead of opposing, Plaintiff filed the FAC on June 1, 2026. Despite having weeks to review Defendants' motion and cure the deficiencies it identified, the FAC deleted the UCL claim, clarified that the CIPA § 632 claim was being brought only on behalf of the California Subclass, and defined the class period as "October 23, 2024 through the date of final judgment." Ex. 7.

*Sanchez-Scott v. Alza Pharma.* 86 Cal. App. 4th 365, 372-73 (2001). Plaintiff must plausibly allege that Defendants intruded (1) "into a place, conversation, or matter as to which the plaintiff has a ***reasonable expectation of privacy***[,]" (2) ***intentionally***, and (3) "in a manner ***highly offensive*** to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) (emphases added). Plaintiff's privacy claims can and should "be adjudicated as a matter of law" at the pleading stage. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (cleaned up).

**A. California's High Bar for Privacy Claims**

California's high bar for privacy claims exists because "[n]o community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). "Actionable invasions of privacy must be sufficiently serious … to constitute an egregious breach of the social norms underlying the privacy right." *Id.*

Over decades of data collection and sharing on the internet, California law has clarified that privacy claims based on internet tracking are disfavored. A "presumption" has developed in California courts "that Internet communications do not reasonably give rise to [an] expectation" of privacy. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019); *accord People v. Nakai*, 183 Cal. App. 4th 499, 517-18 (2010) (explaining how online communications were not private). "Given the inherent nature of the internet, a number of courts have found that consumers do not have a reasonable expectation of privacy over their [online] activity." *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025); *accord State v. Mixton*, 250 Ariz. 282, 293 (2021) ("[I]n this age of information sharing and inter-connectivity, most of us understand that what we do on the internet is not completely private") (cleaned up). Even where consumers might "have a reasonable expectation of privacy in general app usage data, that does not mean that a reasonable consumer would be particularly shocked or offended to discover that [a company] is in fact collecting" their "general app usage data," even if it included the "user's religion, political affiliation, or sexual preference"—information far more personal than Zillow

listings.[5] *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022).

California's nuanced "*social norms* underlying the privacy right" as applied to the internet, *see Low*, 900 F. Supp. 2d at 1025, are not merely discussed in opinions but embodied in laws passed by the Legislature and voters. For instance, the electorate's adoption of an amendment to the California Consumer Protection Act ("CCPA") reflects its understanding that tools that send browsing data to third parties do not egregiously breach social norms, but instead are part of a tradeoff wherein "[s]ome companies that do not charge consumers a fee, subsidize these services by monetizing consumers' personal information." *See* Text of Proposed Laws, Cal. Gen. Election, at 43 (Nov. 3, 2020) (Ex. 4). Instead of banning this conduct, California voters enacted an opt-out system that allows for it. The Legislature then reinforced this opt-out regime twice over with the Delete Act in 2023 and the Opt Me Out Act in 2025. *See* Legis. Counsel's Digest, SB 362 (Oct. 12, 2023) (Ex. 5) (requiring, *inter alia*, data brokers to delete a user's data on an ongoing basis after it is requested); Legis. Counsel's Digest, AB 566 (Oct. 9, 2025) (Ex. 6) (requiring, *inter alia*, web browsers to offer users an easy option to pursue opt-out preferences). Plaintiff "ask[s] the Court to characterize an entire industry as founded on tortious conduct," but the Court "cannot sanction that result," *see Hubbard*, 2024 WL 3302066 at *7, without rejecting Californians' own assessment of social norms regarding online data collection.

### B. The FAC Lacks Factual Allegations Sufficient to Establish the Three Key Elements of a California Privacy Claim.

The FAC does not plausibly satisfy any of the three elements of a privacy claim. Beyond conclusory allegations, the FAC fails to articulate what, if any, data gave rise to a reasonable expectation of privacy, how Defendants acted intentionally (*e.g.*, ¶¶ 169-180), or why Defendants' alleged conduct egregiously violates social norms. These pleading failures remain in the FAC, despite Plaintiff's amendments in response to Defendants' motion to dismiss the original Complaint. Ex. 7.

#### 1. No Reasonable Expectation of Privacy

Plaintiff cannot establish a reasonable expectation of privacy because the FAC makes no specific allegations supporting its claim that Defendants received her "*sensitive* and *confidential* information," as is required under "well-established California law." *See In re Yahoo Mail Litig.*, 7 F.

[5] This inoffensiveness of tracking website browsing is underscored by the use of Google Analytics—which is similar to the Pixel and EAPI—to track visitors on what appears to be Plaintiff's personal website, https://www.lisatsering.me. *See* Kohan Decl. ¶¶ 4-6, Ex. 3.

Supp. 3d 1016, 1040 (N.D. Cal. 2014) (cleaned up). Put otherwise, "[Plaintiff] identifies no embarrassing, invasive, or otherwise private information collected by [Defendants]." *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). "The context-specific nature of the inquiry has been emphasized repeatedly by the California Supreme Court." *See Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *3 (N.D. Cal. Dec. 27, 2019) (Donato, J.) (citing *Hernandez*, 47 Cal. 4th at 286). Absent specifics, the Court simply cannot "undertake the context-specific inquiry into the plausibility of the privacy expectation or the offensiveness of the intrusion," *id.*, which means Plaintiff has not stated a claim.[6]

Plaintiff never explains ***what*** "wide variety of sensitive information on Plaintiff" Defendants allegedly gathered on sites—such as Zillow.com, wyndhamhotels.com, and Redfin.com—allegedly visited by Plaintiff. *See* ¶ 151. This defect is fatal because "the nature of collection and the sensitivity of the collected information are important" to establishing a reasonable expectation of privacy. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020). It is not enough for Plaintiff to repeat the word "sensitive" (*see* ¶¶ 173, 200, 205); this is "simply a bare recitation of [an] element[] of a privacy claim." *See Yahoo*, 7 F. Supp. 3d at 1041. Plaintiff must instead allege what "communications, identities, personal activities, and other data" are at issue (¶ 175), so as to ***show*** they are sensitive. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023) (plaintiffs failed to allege "what information, precisely, Plaintiffs shared with [Defendant]"), *vacated for lack of subject matter jurisdiction*, 2024 WL 1184702 (S.D. Cal. Mar. 18, 2024). Nor can Plaintiff rely on allegations about Defendants' conduct generally (¶¶ 30, 71, 132), to "explain [her] ***personal***" injury.[7] *See Cousin*, 681 F. Supp. 3d at 1123 (emphasis added); *accord Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1178-79 (N.D. Cal. 2025) ("[A] plaintiff must identify the 'specific personal information' she disclosed that implicates a protectable privacy interest." (citation omitted)).

The closest Plaintiff comes to providing any specificity—alleging that "TikTok intercepted

[6] The same is true for her CIPA § 632 claim. *See Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *7 (C.D. Cal. Dec. 24, 2024) ("Courts have recognized similarities in the analysis of whether a reasonable expectation of privacy exists for purposes of California privacy claims and whether a conversation is confidential under CIPA.").

[7] While the FAC includes URLs that Defendants' tools ***can*** allegedly collect (*see* ¶¶ 137, 147), there is no allegation that ***Plaintiff herself*** visited those URLs.

[her] email address and the detailed URLs regarding each property she viewed on the Zillow website" (¶ 153)—is insufficient to support a privacy claim. She does not allege anything sensitive about the real estate she was browsing and, regardless, "disclosure of mere contact information, such as names and addresses, does not unduly interfere with one's right to privacy." *Cabral v. Supple, LLC*, 2012 WL 12895825, at *3 (C.D. Cal. Oct. 3, 2012); *see also Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (Donato, J.) ("[T]here is no legally protected privacy interest in IP addresses."). Similarly, alleging the disclosure of a "numeric code associated with a user and the URL of the … page viewed" does "not meet the standard set by California courts" for a privacy claim. *See Low*, 900 F. Supp. 2d at 1025. At most, Plaintiff's "factual allegations show only that she used [a] website, but not how she used it or what her visits revealed about" her sensitive information. *See Wright v. TrueCare Prop. Holdings, LLC*, 2025 WL 3248749, at *4 (S.D. Cal. Nov. 21, 2025) (dismissing intrusion claim for lack of "egregious" conduct).

**2. No Intentional Intrusion**

Plaintiff also has not alleged that Defendants ***intended*** to intrude on sensitive, personal information. *See, e.g.*, *Briskin v. Shopify Inc.*, 2026 WL 161441, at *4 (N.D. Cal. Jan. 21, 2026) (dismissing intrusion claim "because there is no allegation that Shopify's conduct was willful or intentional"). Defendants expressly ***prohibit*** third-party partners from using the Tools to share any "sensitive information," under the Data Terms. Ex. 2 § 2.8. Against that policy, Plaintiff's allegations must plausibly show that Defendants "purposefully and deliberately" had advertisers deploy the Pixel and EAPI in such a way as to gather Plaintiff's sensitive data, rather than "as a result of accident or mistake." *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024) (cleaned up). The FAC's conclusory refrain that "Defendants intentionally invaded Plaintiff's … privacy rights" (¶¶ 174, 193, 235) is, again, "simply a bare recitation of [an] element[] of a privacy claim," *see Yahoo*, 7 F. Supp. 3d at 1041, and not enough to plausibly ***show*** that element. *See Doe*, 741 F. Supp. 3d at 840 ("Google purposefully acted so as *not* to receive any personal health information"); *Briskin*, 2026 WL 161441, at *5 ("Shopify's policies required merchants to obtain consent for Shopify's access," and whether a merchant obtained proper consent or not, "Shopify's 'intent' is the same in both scenarios.").

**3. Any Intrusion Was Not Highly Offensive**

Finally, Plaintiff does not come close to establishing that the alleged intrusion was so highly offensive as "to constitute an egregious breach of the social norms underlying the privacy right." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011). The "highly offensive" requirement is "an indispensable part of the privacy analysis." *Hernandez*, 47 Cal. 4th at 295. "Plaintiffs must show more than an intrusion upon reasonable privacy expectations. Actionable invasions of privacy also must be 'highly offensive' to a reasonable person, and 'sufficiently serious' and unwarranted as to constitute an 'egregious breach of the social norms.'" *Id.* (citations omitted). "Where a company tracks limited information on its own website and discloses it to third parties, courts in this district have found that the intrusion does not meet the 'high bar' to be highly offensive." *Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *4 (N.D. Cal. May 21, 2026) (collecting cases).

As with the first requirement, Plaintiff's lack of specific allegations about her own data means she cannot establish a highly offensive intrusion. *See Hammerling*, 615 F. Supp. 3d at 1091. But even at a general level, as Plaintiff knows from the recent dismissal of her similar suit against Meta, Defendants' alleged "data collection and disclosure to third parties" constitute "routine commercial behavior," which "[c]ourts in this district have held … is not … 'highly offensive.'" *See Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026). In that suit—brought by the same firm—the court rightly found "no additional aspect of [Defendants'] data collection … suggesting that [Defendants] intentionally engaged in a secret or deceptive, and thus highly offensive, intrusion." *See id.* (granting motion to dismiss). Multiple cases hold that "the collection and disclosure of a user's browsing history and personal information on a public website is 'routine commercial behavior' and not 'highly offensive.'" *Cousin*, 681 F. Supp. 3d at 1126. Plaintiff's conclusory allegations hinge on Defendants "engag[ing] in widespread data collection and interception of Plaintiff's … internet and app activity" (¶ 177), but even if these allegations were sufficiently pleaded, they fail to state a claim. *See, e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of "personal data" and "geolocation information" was not "an egregious breach of social norms").

**4. Plaintiff Cannot Shoehorn this Case into *In re Facebook***

Plaintiff's allegation that Defendants "create comprehensive profiles based on this online and

offline data" (¶ 177), is insufficient to jam Defendants' routine data practices into the deceptive accumulation of cradle-to-grave data as in *In re Facebook*. The allegations there were that Facebook—despite "affirmatively stat[ing] that logged-out user data would not be collected" and thus "set[ting] an expectation of privacy"—secretly tracked logged-out users' "sensitive browsing histories and habits" across "seven million websites" and correlated that browsing history with their Facebook accounts to create "highly personalized" "cradle-to-grave profile[s]" of all these users. 956 F.3d at 599, 602-04. The allegations here fall short as to all three requirements of a privacy claim. *See* ¶¶ 41-42, 130, 177.

The FAC is missing the "critical fact" from *In re Facebook*: "that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway." 956 F.3d at 603. Here, Plaintiff alleges the opposite: that TikTok's Privacy Policy "highlights that its 'partners share information with us about you … such as your activities on other websites and apps or in stores" and "explains that [TikTok] collects 'identifiers for advertising purposes.'" ¶¶ 39, 64 & nn.17, 42. Given such disclosures, a user has "no reasonable expectation of privacy in that data." *See Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024). And Plaintiff has not alleged that Defendants contravened the disclosures in a highly offensive manner.

Further, Plaintiff has not plausibly alleged that, as in *In re Facebook*, Defendants collected a "comprehensive browsing history of an individual"—a "cradle-to-grave profile"—"no matter how sensitive the websites visited." *See* 956 F.3d at 599, 603. The sites Plaintiff allegedly visited ("Zillow.com, wyndhamhotels.com, Healthline.com, Hertz.com, Redfin.com and Hrblock.com") are on their face not sensitive, and she provides no allegations to suggest otherwise. *See* ¶ 151. And because Plaintiff allegedly "does not have a TikTok account," ¶ 5, Defendants cannot do what Facebook did: correlate the user's on-platform activity with off-platform browsing to create a cradle-to-grave profile.

Finally, despite the conclusory assertions that Defendants used information from the Pixel to "de-anonymize" Plaintiff (¶ 155), "it is not clear" from ***specific*** allegations that Defendants actually did so. *See Cousin*, 681 F. Supp. 3d at 1126. In *Griffith*, years of discovery showed Defendants had ***not*** done so. 2024 WL 5279224, at *8. This is dispositive, as "a person does not have a reasonable expectation of privacy over information that cannot even be connected to her." *Sanchez v. L.A. Dep't of Transp.*, 2021 WL 1220690, at *3 (C.D. Cal. Feb. 23, 2021), *aff'd*, 39 F.4th 548 (9th Cir. 2022).

## V. PLAINTIFF'S WIRETAPPING CLAIMS FAIL

Plaintiff's wiretapping claims fail because she does not allege that Defendants intercepted the contents of a communication while in transit, or that Defendants read or attempted to read those contents. Nor does the FAC allege intent. These failures persist despite Plaintiff amending specifically in response to Defendants identifying the same flaws in the original Complaint. Ex. 7.[8]

### A. Inadequate Allegations Regard the "Contents" of Communications

Plaintiff does not adequately allege that the data collected constituted the "contents" of a communication, as opposed to mere "record information." "Contents" refer to the actual substance of the communication—such as the body of an email. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). "Record information" refers to external, non-substantive characteristics—like the device and browser used (user agent), the web page a visitor came from (referrer URL), and the session (Pixel session ID). Record information is ***not*** "contents." *See id.* at 1105-06.

The FAC focuses on Defendants' collection of URLs, but because a URL usually is just "record information," more specifics are required. It alleges that full-string URL addresses ***can*** reveal the contents of communications (*i.e.*, more than merely what website was visited), ***if*** the website owner sets up those addresses to include search terms used by a visitor. ¶¶ 89-93. But it is "not enough" for Plaintiff to "allege the ***potential*** capabilities" of the Pixel; she must allege that the defendant "***in fact***, harnessed the capabilities she describes, and it had the result of capturing the contents of specific communications." *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 69 (W.D. Pa. 2023) (emphases added), *aff'd*, 148 F.4th 153 (3d Cir. 2025). "Courts in this district have dismissed CIPA claims where plaintiffs fail to allege that they ***personally*** engaged in qualifying communications." *Ortiz*, 2026 WL 1430720, at *5 (emphasis added) (collecting cases); *accord Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025) ("Without allegations as to what these Plaintiffs searched, Plaintiffs fail to plausibly allege that Defendant intercepted the contents of their communications.") (collecting cases).

Here, the FAC does not allege any URL visited ***by Plaintiff*** that disclosed contents of her communication. Although it provides two examples of purported URL disclosures, one from Western

---

[8] As before, the wiretapping claims are addressed together because "[t]he analysis for a violation of CIPA is the same as that under [ECPA]." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (citations omitted).

Union (¶ 147) and another from Zillow (¶ 137), neither URL is alleged to have been visited by Plaintiff. Both claims fail for that reason alone. *See, e.g.*, *Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) ("[P]laintiffs do not specifically allege that *their* communications were intercepted by any third parties"); *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) ("Notably, Plaintiff's FAC provides examples of the types of 'full-string URL' allegedly intercepted by Meta, but Plaintiff does not allege she conducted the searches or visited the webpages provided in the examples").[9]

For the same reasons, the FAC fails to plausibly allege that Defendants ***intentionally*** intercepted Plaintiff's communications. There are no allegations that Defendants directed advertisers to configure their websites to use content-containing URLs, rather than content-obfuscating URLs, or even that Defendants were aware of that configuration. Absent such allegations, receipt of content-containing URLs would be accidental or incidental, not intentional. *See supra* Section IV.B.2.

**B. Inadequate Allegations Regarding Interception "in Transit"**

Plaintiff fails to plausibly allege that Defendants acquired the contents of communications ***during transmission***, rather than after transmission. *See de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *7 (N.D. Cal. Dec. 22, 2025). Even if the data is sent to Defendants "within milliseconds" of it being received by the advertiser's website, that is not interception "in transit." *Griffith*, 2024 WL 5279224, at *10 (citing *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)). A plaintiff must allege facts regarding "how the software code embedded on [the relevant] website works." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024); *see also J.S. v. Spring Fertility Holdings, LLC*, 2026 WL 1483490, at *5 (N.D. Cal. May 27, 2026) (a plaintiff "must plead specific facts about when the interception occurs") (cleaned up). A conclusory allegation of real-time interception is insufficient "without specific facts about … when or how the interception took place." *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *10 (C.D. Cal. Nov. 27, 2023).

Here, the FAC is devoid of any allegation that the Pixel transmits data to Defendants while the

---

[9] There are no allegations that any of the six websites used full-string URLs ***on the pages Plaintiff visited***; that those URLs include search terms; or that Plaintiff entered search terms on these pages. Without these allegations, the URLs are not "contents." *Compare Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *3 (N.D. Cal. Aug. 22, 2023) (detailed examples of URLs revealing contents), *with Cook*, 689 F. Supp. 3d at 69 (allegations about "URLs" lacked "critical necessary details").

user's communication is "in transit." Plaintiff makes claims about ***what*** data TikTok receives from the Pixel, not about ***when*** and ***how*** that data is sent to TikTok. She offers only the conclusion that the interception occurs "in transit," ¶ 190, but that is not enough, *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (plaintiff "fail[ed] to explain how the software works or how the interception occurs"). Similarly, Plaintiff has failed to allege that EAPI intercepts communications in transit.[10] The FAC lacks any facts explaining how EAPI works. This is fatal to her interception claims. *See Smith v. Rack Room Shoes, Inc.*, 2026 WL 183852, at *3 (N.D. Cal. Jan. 23, 2026) (dismissing for lack of "information about how soon … forwarding occurs or whether it is contemporaneous with the receipt").

### C. Inadequate Allegations Regarding "Reading" the Contents

Plaintiff's wiretapping claim fails for the further reason that she has not plausibly alleged that Defendants ***read or attempted to read*** the contents of a communication while in transit. Reading requires "some effort at understanding the substantive meaning" of the communication. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025). "[I]t would stretch CIPA's statutory language too far" to include "any hypothetical future attempt to read or understand the meaning of a communication." *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *6 (N.D. Cal. Apr. 17, 2025).

Far from alleging in-transit reading, the FAC alleges only collection for future use (*i.e.*, the assembly of a "profile"). ¶¶ 151-157. These allegations "suggest that [Defendants] would analyze Plaintiff['s] communications ***after*** it collects them, not as it collects them." *Lewis*, 2025 WL 3687546, at *12 (emphasis added). "That [TikTok] processes the data once it is on its servers suggests the contents are not 'read' or 'learned' while in transit." *Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *6 (N.D. Cal. Apr. 21, 2026).

## VI. PLAINTIFF'S SECTION 638.51 CLAIM FAILS

Plaintiff pleads herself out of a pen register claim by alleging that Defendants' tools collect the contents of communications. *See* ¶¶ 181-207 (claiming Defendants captured contents of communications). By definition, a pen register device "[can]not [capture] the contents of a communication." Cal. Penal Code § 638.50(b). For that reason, two courts have already rightly held

[10] Nor should Plaintiff add such an allegation without a good-faith basis for doing so. In *Griffith*, after extensive discovery, the court found that EAPI does not intercept anything "in transit" because the data is taken from the website's storage, not from the user's communication. 2024 WL 5279224, at *10.

that the Pixel is not a pen register device. *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) ("[T]he TikTok software is not a trap and trace device and § 638.50 does not apply"); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 851-52 (N.D. Cal. 2025) (same).[11] As with Plaintiff's other claims in the FAC, Defendants already made these arguments in their original motion to dismiss, yet Plaintiff failed to correct them.

Regardless, Plaintiff cannot allege a § 638.51 claim because—properly construed—the provision's scope should not be extended to internet communications. This is apparent from both the text of § 638.51 and the context of the "statutory scheme as a whole." *See Turrieta v. Lyft, Inc.*, 16 Cal. 5th 664, 711 (2024). Neither § 638.51 nor § 638.50—which offers the definitions used in § 638.51—says anything about the internet. Neither do § 638.52 nor § 638.53; instead, § 638.52 specifically refers to "telephone line[s]" and "telephone number[s]." Cal. Penal Code § 638.52(c), (d)(1), (d)(3). And the People and Legislature of California have—over decades[12]—instituted an opt-out regime that is incompatible with Plaintiff's reading of § 638.51, which would compel an opt-in regime. "[W]e construe every statute with reference to the whole system of law of which it is part, so that all may be harmonized and anomalies avoided." *Hohenshelt v. Super. Ct.*, 18 Cal. 5th 310, 332 (2025). It would lead to "absurd results" if the carefully calibrated opt-out regime designed to address the internet were

---

[11] Plaintiff does not plead the pen register and wiretapping claims in the alternative. *See In re Apple Data Priv. Litig.*, 2026 WL 146025, at *5 (N.D. Cal. Jan. 20, 2026) (pen register claim fails when plaintiff fails to allege alternative theory of recovery in tandem with other CIPA claims). Nor could she, because the issue is not alternative ***legal*** theories, but that Plaintiff could not allege both that (i) the Tools can capture contents and (ii) the Tools do not capture contents. To be clear, both Tools conceivably ***can*** do so (which defeats the pen register claim), but Plaintiff does not allege that they ***have*** captured contents of her communications in transit (which defeats the wiretapping claims).

[12] The 2003 California Online Privacy Protection Act did not require users to opt in to online data collection practices; it only required robust disclosures about data collection. Cal. Bus. & Prof. Code §§ 22575-22579. The 2018 CCPA regulates the internet as part of the nation's "first … comprehensive consumer privacy law." Marjorie Richter, *The California Consumer Privacy Act (CCPA)—Legal glossary*, Thomson Reuters (Dec. 15, 2025), available at https://legal.thomsonreuters.com/blog/the-california-consumer-privacy-act/. Under the CCPA, businesses must provide (1) notice of what data is collected; and (2) an opportunity to opt out of data collection and sale. Cal Civ. Code § 1798.120. The 2020 California Privacy Rights Act ("CPRA") placed consumers "on a more equal footing when negotiating with businesses" by, among other things, entitling them "to a clear explanation of the uses of their personal information." Text of Proposed Laws, Cal. Gen. Election, at 43 (Nov. 3, 2020) (Ex. 4). In 2023, the Governor signed the Delete Act. Legis. Counsel's Digest, SB 362 (Oct. 12, 2023) (Ex. 5), which requires data brokers to give more disclosures about CCPA rights and imposes an ongoing data deletion obligation once requested. In 2025, the Governor signed the Opt Me Out Act. Legis. Counsel's Digest, AB 566 (Oct. 9, 2025) (Ex. 6), which requires browsers to provide consumers with a tool to state privacy preferences, including opting out of data sales. *Id.*

overridden by an overreading of CIPA. A business could provide robust disclosures and a conspicuous opportunity to opt out of the data collection—in perfect compliance with the CCPA—only to then run afoul of CIPA and be liable for $5,000 per violation.

While many courts have extended CIPA and § 638.51 to the internet,[13] no precedent compels that. Defendants urge the Court to look at the issue afresh and follow the persuasive reasoning of Judge Bybee, who would not apply CIPA to the internet because the CCPA "explicitly provides recourse for internet privacy violations," *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring in part), and Judge Chhabria, who recognized the absurdity of holding businesses criminally liable for using standard web tools, *Eating Recovery*, 806 F. Supp. 3d at 1112.

## VII. THE COURT SHOULD DENY LEAVE TO AMEND

Having already amended her Complaint, Plaintiff should not be permitted to further protract this case with another amendment to try to address the same defects already identified in Defendants' motion to dismiss. *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("discretion to deny leave to amend is particularly broad where plaintiff has previously amended"). The defects identified in the original Complaint persist in the FAC. Ex. 7. Where, as here, Plaintiff "fil[ed] a nearly identical pleading, … there are no plausible amendments or additional facts that can cure the pleading deficiencies." *Hansen v. W. Progressive, LLC*, 2017 WL 2722014, at *6 (E.D. Cal. June 23, 2017); *see also Barth v. Kernan*, 2018 WL 4300532, at *1 (C.D. Cal. Sept. 10, 2018) (similar).

The pleading deficiencies set out above, including Plaintiff's failure to allege specific URLs or sensitive data collected from her, were within Plaintiff's control and knowledge to remedy—if it were possible to remedy them. Plaintiff's inaction is "a strong indication" that she has "no additional facts to plead," and that she has made her "best case and ha[s] been found wanting." *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

## VIII. CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss the FAC.

---

[13] Defendants understand that this Court recently rejected this argument. *See Echeverria-Corzan v. Torrid LLC*, No. 3:25-cv-06926-JD, Dkt. No. 35 (N.D. Cal. Feb. 26, 2026). However, the Second Appellate District's Court of Appeal will soon consider whether § 638.51 applies to internet communications. *See Variety Media, LLC v. Super. Ct.*, No. B350578 (Cal. Ct. App.). Should *Variety* reject Plaintiff's theory, Defendants respectfully request that this Court reconsider its interpretation.

Dated: June 15, 2026

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

By: */s/ Mark R. Yohalem*
Mark R. Yohalem

*Attorneys for Defendants*
*ByteDance Inc., TikTok Inc., &*
*TikTok USDS Joint Venture LLC*