**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main St., Ste. 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: klynn@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LISA TSERING, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BYTEDANCE, INC., TIKTOK, INC., and TIKTOK USDS JOINT VENTURE LLC,

Defendants.

Case No. 3:26-cv-01536-JD

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT**

Judge: Hon. James Donato
Hearing Date: July 23, 2026
Hearing Time: 10:00 a.m.
Courtroom: 11

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. PLAINTIFF STATES INTRUSION UPON SECLUSION AND CIPA § 632 CLAIMS .......... 2

A. Plaintiff Has A Reasonable Expectation Of Privacy .......... 2

B. Defendants' Conduct Was Highly Offensive .......... 4

C. Plaintiff Adequately Alleges Intentional Intrusion .......... 5

D. Plaintiff's Claims Fall Within *In re Facebook* .......... 6

II. PLAINTIFF STATES CLAIMS UNDER CIPA § 631(A) AND THE ECPA .......... 8

A. Plaintiff Alleges The Interception Of Content .......... 8

B. The Interception Occurred "In Transit" .......... 9

C. Plaintiff Adequately Alleges Reading Of Contents .......... 10

D. Defendants Are Third-Party Eavesdroppers .......... 10

E. The Crime-Tort Exception Forecloses The ECPA Party Exception .......... 11

III. PLAINTIFF STATES A CLAIM UNDER CIPA § 638.51 .......... 11

A. Plaintiff Properly Pleads In The Alternative .......... 12

B. This Court Has Already Held That § 638.51 Reaches Internet Trackers .......... 13

C. There Is No Conflict With The CCPA .......... 14

CONCLUSION .......... 15

## TABLE OF AUTHORITIES


PAGE(S)

**CASES**

*Ambriz v. Google, LLC*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) ........ 10

*Anderson v. National Collegiate Athletic Association*,
2026 WL 925519 (C.D. Cal. Mar. 25, 2026) ........ 15

*Briskin v. Shopify, Inc.*,
2026 WL 161441 (N.D. Cal. Jan. 21, 2026) ........ 6

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 8

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 11

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 3, 8, 10

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025) ........ 2, 12

*Chatrie v. United States*,
2026 WL 1855568 (U.S. June 29, 2026) ........ 4

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ........ 8

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ........ 13

*Deivaprakash v. Condé Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) ........ 3, 12

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 6

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ........ 11

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........ 12, 13

*Freifeld v. Epsilon Data Management, LLC*,
2026 WL 1759012 (N.D. Ill. June 15, 2026) ........ 1

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 3, 14

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026).......... 1, 5, 15

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 5, 6, 10

*Griffith v. TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024).......... 5

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009).......... 2, 5

*In re Apple Data Privacy Litig.*,
2026 WL 146025 (N.D. Cal. Jan. 20, 2026).......... 12

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .......... 3, 6, 7

*In re Meta Android Privacy Litig.*,
2026 WL 1279416 (N.D. Cal. May 11, 2026).......... 5

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022).......... 2

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025).......... 13

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023).......... 9, 10

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023).......... 10

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026) .......... 3

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023).......... 2, 3, 4

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026).......... 2

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) .......... 14

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025).......... 1

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 15

*Maketa v. Valnet Inc.*,
2026 WL 323126 (N.D. Cal. Feb. 6, 2026) .......... 14

*Manier v. Triple Lift Inc.*,
2026 WL 1295546 (C.D. Cal. Apr. 15, 2026) .......... 1

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) .......... 11

*Mirmalek v. Los Angeles Times Communications LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 15

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 2, 12

*Ortiz v. Foris Dax, Inc.*,
2026 WL 1430720 (N.D. Cal. May 21, 2026) .......... 14

*Prang v. Los Angeles County Assessment Appeals Board*,
15 Cal. 5th 1152 (2024) .......... 13

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 8, 11

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 11

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 9

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... passim

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 10

*Selby, v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) .......... passim

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .......... 1, 3, 11

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 14

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .......... 12

*Taylor v. ConverseNow Techs., Inc.*,
2025 WL 2308483 (N.D. Cal. Aug. 11, 2025) .......... 10

*Torres v. Seatgeek, Inc.*,
2026 WL 1495202 (N.D. Cal. May 28, 2026) .......... 14

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......... 5

*Wiley v. Univ. Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) .......... 13

**STATUTES**

18 U.S.C. § 2511(2)(d) .......... 11

Cal. Civ. Code § 1798.100(a) .......... 15

Cal. Civ. Code § 1798.175 .......... 15

Cal. Pen. Code § 638 .......... 11, 12, 13, 14

**RULES**

Fed. R. Civ. P. 8(d) .......... 12

Plaintiff Lisa Tsering ("Plaintiff") respectfully submits this opposition to Defendants ByteDance Inc., TikTok Inc., and TikTok USDS Joint Venture LLC's ("Defendants") Motion to Dismiss the First Amended Class Action Complaint (ECF No. 32) (the "Motion" or "MTD").

## INTRODUCTION

This case involves egregious privacy violations perpetuated on an enormous scale by Defendants. Plaintiff alleges that, through the TikTok Pixel and TikTok's Events API, Defendants surveil millions of Americans—including millions of people who do not even have TikTok accounts— by tracking their activity across hundreds of websites and mobile applications. First Amended Complaint ("FAC") ¶¶ 1-2, 28-35, 130. Defendants, for profit, record this activity in real time and store it indefinitely, capturing both persistent identifiers (including IP addresses, mobile advertising identifiers, and email addresses and phone numbers) and the contents of users' communications with the websites they visit (including the full-string URLs of the pages they view, the buttons they click, and the items they add to their carts), all without users' knowledge or consent. *Id.* ¶¶ 36-101. They match the data they intercept to identified individuals through a process they call "Advanced Matching," compile it into detailed, de-anonymized profiles linked to each person's email address and phone number, and use and share those profiles to target advertising on and off TikTok, fueling an advertising machine worth billions of dollars. *Id.* ¶¶ 2-3, 34, 103-29, 140. The result is surveillance of nearly every aspect of Plaintiff's and Class Members' online lives, and a loss of control over even their most intimate information, which is continually disclosed to advertising partners and other data brokers in the blink of an eye and without notice or consent. *Id.* ¶¶ 1, 127-59.

Numerous courts have sustained claims where companies like Defendants conducted such widespread surveillance, interception, profiling, and data selling. *See, e.g., Freifeld v. Epsilon Data Management, LLC*, 2026 WL 1759012, at *7 (N.D. Ill. June 15, 2026); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *4 (N.D. Cal. Jan. 6, 2026); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 871 (N.D. Cal. 2026); *Semien v. PubMatic Inc.*, 2026 WL 216333, at *11 (N.D. Cal. Jan. 27, 2026); *Selby, v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *4 (N.D. Cal. Oct. 17, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1095 (N.D. Cal. 2025); *Manier v. Triple Lift Inc.*, 2026 WL 1295546, at *7 (C.D. Cal. Apr. 15, 2026); *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at

*13 (C.D. Cal. Dec. 4, 2025); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 929 (N.D. Cal. 2023). Courts in this District have even ruled that, at the pleadings stage, Defendants' Tracker[1] is an illegally installed "pen register" within the meaning of the CIPA. *See Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1107 (S.D. Cal. 2025). This Court should not reach a different result, despite Defendants' attempts to minimize the scope of the harms alleged and to raise factual disputes.

## ARGUMENT

## I. PLAINTIFF STATES INTRUSION UPON SECLUSION AND CIPA § 632 CLAIMS

To state an intrusion claim, Plaintiff must allege that Defendants intruded into a matter as to which she had a reasonable expectation of privacy, that they did so intentionally, and that the intrusion was highly offensive to a reasonable person. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009); *see also Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 864 (N.D. Cal. 2026). The analysis of Plaintiff's § 632 claim substantially overlaps, because courts have found that the existence of a reasonable expectation of privacy and the confidential nature of the communication turn on the same context-specific inquiry. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022). Plaintiff satisfies each element, and Defendants' contrary arguments either misread the pleading or raise fact questions that cannot be resolved at this stage.

### A. Plaintiff Has A Reasonable Expectation Of Privacy

Defendants contend that Plaintiff fails to allege any data in which she holds a reasonable expectation of privacy. MTD 6-8. That argument disregards the gravamen of Plaintiff's allegations. Plaintiff alleges that Defendants do not merely receive isolated, anonymous data points; they deploy the TikTok Pixel across hundreds or thousands of websites to track users across the internet, match the collected data to a persistent identity through "identity resolution" (what TikTok calls Advanced Matching), and compile comprehensive, non-anonymous profiles that are offered for sale to advertisers. FAC ¶¶ 34, 36, 41-42, 118-126, 130-132, 155.

Courts in this District have repeatedly held that allegations of this kind—cross-site tracking aggregated into identified profiles and monetized—establish a reasonable expectation of privacy at

[1] All capitalized terms not defined herein shall have the same meaning as in the FAC.

this stage. *See Semien*, 2026 WL 216333, at *7 (allowing intrusion claim to proceed where defendant "allegedly tracks, compiles, and sells massive amounts of information about plaintiffs without their knowledge that a [ ] pixel has been loaded on a given website"); *Katz-Lacabe*, 668 F. Supp. 3d at 942 (sustaining claims premised on the "ability to amass vast amounts of personal data for the purpose of identifying individuals and aggregating their many identifiers"); *Riganian*, 791 F. Supp. 3d at 1087 ("[T]he tracking of individuals' activity across thousands of websites, combined with extensive offline records … to generate uniquely identifying profiles … is sufficient to allege intrusion into privacy."); *Selby*, 2025 WL 2950164, at *3 (same).

The Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 603 (9th Cir. 2020), is squarely on point. There, the court held that users adequately alleged a reasonable expectation of privacy where Facebook acquired an "enormous amount of individualized data through its use of cookies on the countless websites that incorporate[d] Facebook plug-ins." *Id.* (cleaned up). That is precisely what Plaintiff alleges here: through the TikTok Pixel and its cookies, Defendants collect individualized web-activity data without user knowledge and link it to identified profiles. FAC ¶¶ 36-42, 130-132.

Defendants' reliance on a "presumption" that internet communications carry no expectation of privacy is misplaced. MTD at 5. Courts in this District have explained that the "argument, that California courts have developed a presumption that users do not have an expectation of privacy over internet communications, fails on examination." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023). In any event, the reasonable-expectation inquiry is "factually intensive" and generally unsuited to resolution on the pleadings. *See Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025). Several courts have held that the reasonable-expectation question need not be resolved at this stage, because the privacy injury lies in the unauthorized profiling itself. *See Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1106-07 (N.D. Cal. 2025) ("[I]t does not matter whether [Plaintiff] had a reasonable expectation of privacy in the information collected because the privacy violation … encompasses how th[e] collection allegedly allowed [Defendants] to: (1) build a profile reflecting [Plaintiff's] personal information; and (2) interfere with [Plaintiff's] ability to remain anonymous.") (cleaned up); *Jones v. Skullcandy, Inc.*,

2026 WL 699819, at *18 (S.D. Cal. Mar. 12, 2026) ("At the pleading stage, the Court finds that Plaintiff has sufficiently alleged a reasonable expectation that the immense amount of personally identifiable and browsing data allegedly collected by the Tracking Technologies would not be shared with third parties.").

Defendants' effort to recharacterize the data as innocuous "contact information" and IP addresses likewise fails. MTD at 7-8. The Supreme Court held just today that "[a]n individual has a reasonable expectation of privacy in records about his cell phone's location," in a case involving the collection of information from "sources include[ing] … IP address information." *Chatrie v. United States*, --- S. Ct. ---, 2026 WL 1855568, at *4-5 (U.S. June 29, 2026). Further, the FAC alleges that Defendants captured Plaintiff's email address, the detailed URLs of each property she viewed on Zillow, and used the resulting data to de-anonymize her and append her activity to a saleable profile. FAC ¶¶ 151-156. Plaintiff further alleges—consistent with the FTC's repeated guidance—that hashing does not render email addresses and phone numbers anonymous. FAC ¶¶ 84-86. Whether the recorded information is in fact anonymous is a quintessential question of fact, not properly resolved on a motion to dismiss. *See Riganian*, 791 F. Supp. 3d at 1087 (rejecting "pseudonymization" argument at the pleading stage).

**B. Defendants' Conduct Was Highly Offensive**

Defendants argue that their conduct amounts to no more than "routine commercial behavior" and cannot be highly offensive. MTD at 9. On the contrary, Plaintiff alleges covert, cross-internet surveillance of users—including users like Plaintiff who have no TikTok account—followed by de-anonymization, aggregation into comprehensive dossiers, and sale of those dossiers to advertisers. FAC ¶¶ 2, 79-81, 130-132, 155, 157.

Courts have repeatedly held that such conduct crosses the "highly offensive" threshold and goes well beyond the routine commercial behavior of collecting contact information for sending advertisements. *See*, *e.g.*, *Katz-Lacabe*, 668 F. Supp. 3d at 942 (allegations of data aggregation "would go well beyond the 'routine commercial behavior'"); *Riganian*, 791 F. Supp. 3d at 1088 (court "cannot at this stage conclude … that the alleged aggregation, synthesis, and sale of comprehensive online and offline data of individuals without their knowledge is not highly

offensive"); *Selby*, 2025 WL 2950164, at *3 (collecting cases). At minimum, the offensiveness of an intrusion is ordinarily a question of fact. *Hernandez*, 47 Cal. 4th at 287.

Defendants' reliance on the dismissal of Plaintiff's separate action against Meta (MTD at 9-10) does not change the analysis. *See Tsering v. Meta Platforms, Inc.*, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026). That ruling addressed a different defendant, a different tool, and a different complaint, nor the weight of District authority sustaining claims of de-anonymizing, cross-site profiling. Plaintiff here pleads the additional, defendant-specific mechanics of TikTok's identity-resolution and Advanced-Matching products—including the hashing and collection of email addresses and phone numbers to match users to identities. FAC ¶¶ 76-77, 118-126. Indeed, Judge Lin, who decided *Tsering*, has found "highly offensive" behavior multiple times in cases with allegations more similar to those here. *See*, *e.g.*, *Gilligan*, 2026 WL 32259, at *2; *Selby*, 2025 WL 2950164, at *3; *In re Meta Android Privacy Litig.*, --- F. Supp. 3d ---, 2026 WL 1279416, at *6 (N.D. Cal. May 11, 2026).

Defendants' *Griffith* citation fares no better. *Griffith v. TikTok, Inc.*, 2024 WL 5279224 (C.D. Cal. Dec. 24, 2024), turned on findings made after extensive discovery, as Defendants' own brief concedes. MTD at 10, 13. Those merits findings have no bearing on whether Plaintiff states a claim. Moreover, Plaintiff here is not a TikTok user (FAC ¶ 5), making tracking of her more invasive.

**C. Plaintiff Adequately Alleges Intentional Intrusion**

Defendants claim Plaintiff fails to allege intent because their Business Products (Data) Terms direct advertisers to obtain consent and to refrain from sharing sensitive data. MTD at 8. Not so.

*First*, the Data Terms are extrinsic to the FAC. Even if the Court takes notice of their existence, it may not accept Defendants' characterization of their import or treat them as establishing Defendants' state of mind—a disputed factual matter—on a Rule 12(b)(6) motion. *See* Defs.' RJN 2 (conceding the "import" of the Terms is "a legal question" and not a fact subject to notice). What a third-party advertiser was contractually told to do does not speak to Defendants' own intent in designing and operating the tools that ingest the data. *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 860 (W.D. Wash. 2024) ("[T]he Court is not convinced that Defendant's inclusion of a catch-all provision requiring its customers to comply with the law generally is enough to satisfy its legal obligations under CIPA.")

*Second*, Plaintiff alleges affirmative, purposeful design. Defendants built and market "Automatic Advanced Matching," which "automatically identifies form fields … and hashes and collects the customer information entered on those pages," including "name, zip, email and phone." FAC ¶ 77. Defendants tout the resulting "ID Bridging" as a feature. FAC ¶ 76. Allegations that a defendant engineered its product to capture and match exactly the data at issue plausibly establish intent; this is not a case of "accident or mistake." *Cf. Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024); *Gladstone*, 739 F. Supp. 3d at 860 (finding intentionality where "[t]he SAC alleges that Amazon Connect is designed for the purpose of recording and analyzing communications between its customers (like Capital One) and consumers or other entities"). At a minimum, intent is a fact question inappropriate for resolution here.

Defendants' reliance on *Briskin v. Shopify, Inc.*, 2026 WL 161441 (N.D. Cal. Jan. 21, 2026), is misplaced. MTD at 8. *Briskin* reasoned that a merchant-facing consent requirement did not bear on the defendant's intent because the defendant's conduct "was the same" whether or not the merchant obtained consent. That reasoning does not apply here, because Plaintiff does not predicate intent on whether a website operator obtained consent. Plaintiff alleges that Defendants themselves designed and built tools—Automatic Advanced Matching and ID Bridging—that purposefully identify form fields and match that data to identified individuals. FAC ¶¶ 76-77. Unlike the code in *Briskin*, those features are alleged to be engineered for the very purpose of capturing and re-identifying the data at issue, which makes Defendants' intent materially different from a provider whose "intent is the same in both scenarios." *Briskin*, 2026 WL 161441, at *5. The meaning and effect of the Data Terms—to the extent relevant at all—present disputed factual questions that cannot be resolved on the pleadings.

### D. Plaintiff's Claims Fall Within *In re Facebook*

Defendants argue that Plaintiff cannot "shoehorn" her claims into *In re Facebook* because she identifies no misrepresentation, alleges no cradle-to-grave profile, and—lacking a TikTok account—cannot have her on-platform activity correlated with off-platform browsing. MTD at 9-11. Each premise is mistaken.

The injury recognized in *In re Facebook*, 956 F.3d at 598-603, was the compilation of a

personally identifiable browsing profile and the loss of control over one's information; it does not depend on the plaintiff holding an account with the defendant. Plaintiff alleges that Defendants track and de-anonymize non-account-holders precisely—collecting and storing "the information of millions of people who do not have TikTok accounts" and matching that activity to identifiers such as hashed email addresses and phone numbers. FAC ¶¶ 2, 39, 41-42, 82, 155, 157. That is the exact *In re Facebook* harm, not a departure from it. Defendants' "no misrepresentation" point misreads the claim. *Riganian*, 791 F. Supp. 3d at 1086 ("[W]hile the Ninth Circuit in *Facebook Tracking* found relevant to its analysis that Facebook had represented that it would not collect information on users when they were logged out but did so nonetheless, *it did not hold that such misrepresentations are required to establish a reasonable expectation of privacy*.") (emphasis added). Plaintiff does not rest her intrusion theory on a broken promise; she alleges non-consensual interception and profiling she neither knew of nor could have discovered. FAC ¶¶ 157-158. And whether Defendants in fact de-anonymized Plaintiff is, again, a disputed fact—Plaintiff alleges they did, FAC ¶ 155, and that allegation must be credited at this stage.

Defendants' remaining points—that the websites Plaintiff visited are "on their face not sensitive" and that no "cradle-to-grave" profile is alleged (MTD at 10)—likewise fail. Plaintiff's identified sites include Healthline.com, a health-information site, and the FAC alleges the Tools can capture "Add to Cart" events revealing prescription medications, FAC ¶¶ 97-102; sensitivity of the collected data is a fact-bound inquiry. *See In re Facebook*, 956 F.3d at 603. In any event, *In re Facebook* did not condition the privacy injury on the sensitivity of any single website; the harm was the compilation of a comprehensive, identifiable profile from activity aggregated across many sites. *Id.* at 598-603; *see also Riganian*, 791 F. Supp. 3d at 1087 ("F*acebook Tracking*'s principal concern was the capacity of new technologies to track and compile both online and offline activity to provide access to a category of information otherwise unknowable and implicate privacy concerns in a manner different from traditional intrusions.") (cleaned up). Plaintiff alleges exactly such aggregation across "hundreds of websites," FAC ¶¶ 1-2, 130-132, 155, and the FAC's Advanced Matching and ID Bridging allegations explain how non-account-holders are de-anonymized through email addresses and phone numbers—so a TikTok account is not the predicate for the *In re Facebook*

harm. Whether Defendants assembled such a profile is a merits question for discovery.

## II. PLAINTIFF STATES CLAIMS UNDER CIPA § 631(A) AND THE ECPA

Defendants attack the wiretapping claims on three grounds: that Plaintiff fails to allege interception of the "contents" of a communication, that she fails to allege interception "in transit," and that she fails to allege "reading" of contents. MTD at 11-13. The claims are analyzed together because "[t]he analysis for a violation of CIPA is the same as that under [ECPA]." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (citation omitted). Plaintiff satisfies each requirement, and Defendants' remaining defenses—the party exception and consent—fail as well.

### A. Plaintiff Alleges The Interception Of Content

"Content is defined to 'include[] any information concerning the substance, purport, or meaning of [the] communication.'" *Brown*, 685 F. Supp. 3d at 935. Full-string URLs that disclose the specific pages a user views or the terms a user enters are "contents." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' … under CIPA and ECPA."). Plaintiff alleges exactly such interception: that the TikTok Pixel captures the "detailed, full-string URL from each page … a user visits," that on Zillow those URLs reflect the specific properties a user views, and that on Western Union the URL discloses "the amount sent and the currency exchange requested." FAC ¶¶ 90-96, 137, 147. Plaintiff further alleges interception of "Button Click" events—for example, clicking "Send Now" on Western Union—and "Add to Cart" events that can reveal specific purchases. FAC ¶¶ 97-102. These are textbook "contents." *See Selby*, 2025 WL 2950164, at *3 (full-string URLs reflecting "search queries and specific items" are contents).

Defendants' principal rejoinder—that Plaintiff does not allege a single content-bearing URL she personally visited (MTD at 11-12)—is wrong. Plaintiff alleges that she visited Zillow and that, on Zillow, "TikTok intercepted [her] email address and the detailed URLs regarding each property she viewed." FAC ¶ 153. Read together with the allegation that Zillow URLs embed the name of the content viewed, FAC ¶ 94, Plaintiff alleges that content-bearing URLs reflecting her own activity were intercepted. That is more than the "potential capabilities" pleading Defendants cite; it is an allegation that the capability was in fact harnessed as to Plaintiff. *Contra Cook v. GameStop, Inc.*,

689 F. Supp. 3d 58, 69 (W.D. Pa. 2023). Any residual dispute over which URLs Plaintiff visited is a factual one for discovery.

**B. The Interception Occurred "In Transit"**

Defendants contend that the FAC does not allege contemporaneous interception. MTD at 12-13. Not so. Plaintiff alleges that the Pixel is "programmed so that each event (pageview, button click, etc.) … is triggered simultaneously with the user's corresponding action on a website and any intercepted information is therefore intercepted in real time." FAC ¶ 192. Plaintiff further alleges that Defendants "routed Plaintiff's … electronic communications to Defendants' servers" as the user accessed the websites. FAC ¶ 194.

These are not conclusory labels; Plaintiff describes how the Pixel loads onto the browser and then captures and transmits the user's communications as the user makes them. FAC ¶¶ 40-41, 192. That suffices. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 962 (N.D. Cal. 2023) (allegations that, once installed, the tracker "begins to intercept communications when the user makes communications to the website" state an in-transit interception); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (parallel signal sent "while the signal was already in transit" falls within § 631). Defendants' contrary authority is inapposite or premature. *Griffith*'s in-transit finding rested on a developed evidentiary record showing the Events API drew data from website storage rather than from the user's communication. MTD at 13 & n.10 (acknowledging the finding followed "extensive discovery"). Plaintiff's § 631 theory rests on the TikTok Pixel's contemporaneous interception, FAC ¶¶ 192-194; whether the mechanics ultimately match Defendants' description is a merits question, not a pleading defect.

Defendants' authorities requiring "specific facts about … how the interception took place" are satisfied here and, in any event, are distinguishable. Those cases—*de Ayora*, *Cody*, *Heiting*, and the others Defendants cite (MTD at 12-13)—dismissed claims that offered only the bare label "in transit" with no description of the tool's operation. The FAC, by contrast, describes the mechanism: the Pixel is a script that loads in the user's browser and, as the user performs each action, fires an event that simultaneously transmits the corresponding communication to Defendants' servers in real time, before the communication has come to rest. FAC ¶¶ 40-41, 192-194. That browser-side, event-

triggered transmission is materially different from the server-side *storage* retrieval that defeated the *Griffith* claim after discovery, and courts have sustained § 631 claims on materially identical Pixel allegations. *See James*, 701 F. Supp. 3d at 962.

**C. Plaintiff Adequately Alleges Reading Of Contents**

Defendants argue that Plaintiff alleges only collection for later use, not "reading" in transit. MTD at 13. But the FAC alleges that Defendants "read, attempted to read, and learned the contents" of Plaintiff's communications while they were in transit, FAC ¶ 190, and that each event is intercepted and processed in real time, FAC ¶¶ 192-193. The Pixel's entire function is to apprehend the substance of the communication—which page, which click, which item—as it occurs, which is the "understanding" that the statute requires. *Cf. Brown*, 685 F. Supp. 3d at 935. To the extent Defendants rely on decisions describing post-collection analysis as insufficient, those turned on pleadings that alleged only later server-side processing. Here, by contrast, Plaintiff ties the reading to the moment of interception. FAC ¶¶ 190, 192. The sufficiency of those allegations is, at worst, a fact-bound question unsuited to dismissal.

**D. Defendants Are Third-Party Eavesdroppers**

Although the Motion does not press the point at length, Plaintiff's allegations foreclose any "party" defense under § 631(a). A software-as-a-service provider is a third party where it has "the capability of using its recording for another purpose." *Taylor v. ConverseNow Techs., Inc.*, 2025 WL 2308483, at *4 (N.D. Cal. Aug. 11, 2025) (citing *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023)); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 854 (W.D. Wash. 2024); *Ambriz v. Google, LLC* 2025 WL 830450, at *3 (N.D. Cal. Feb. 10, 2025). Plaintiff alleges that Defendants are "a separate legal entity that offers [a] 'software-as-a-service' and not merely … passive device[s]," and that they use the intercepted data for their own purposes—building, enriching, and selling user profiles. FAC ¶¶ 189, 191; *see Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520-21 (C.D. Cal. 2021). Defendants' capabilities thus "go beyond the ordinary function of a tape recorder," and they are not parties to Plaintiff's communications with the underlying websites. *Taylor*, 2025 WL 2308483, at *4 (cleaned up); *see* FAC ¶ 189.

### E. The Crime-Tort Exception Forecloses The ECPA Party Exception

Even assuming a website operator consented to the Pixel, the ECPA's one-party-consent exception does not apply where the communication is intercepted "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). Courts apply this crime-tort exception where, as here, a defendant intercepts communications to associate the data with preexisting profiles in violation of state privacy law and to monetize it through targeted advertising. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021); *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024). Plaintiff pleads exactly that. FAC ¶¶ 238-239.

That Defendants' purpose was ultimately commercial does not save them. As Judge Tigar explained, "commercially exploiting unlawfully obtained information" is not lawful "merely because it is profitable"; "[t]hat's like saying that a bank robber's purpose was not to commit a crime—it was to make money." *Riganian*, 791 F. Supp. 3d at 1090-91(denying to "adopt any bright-line rule insulating financial motives from the crime-tort exception") (cleaned up). Judge Tigar is not alone in his reasoning. *See*, *e.g.*¸ *Semien*, 2026 WL 216333, at *10 ("As numerous lower courts have found, being primarily motivated by profit does not render the crime-tort exception inapplicable."); *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025) (finding under the alternate reading, "the ECPA would not prohibit a person from intercepting a communication with the intent to use that communication to blackmail so long as the ultimate reason for the blackmail was to make money"); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 850 (E.D. Cal. 2025) ("financial[] motivate[ions] … do not immunize Defendants from liability under the ECPA"); *R.C*, 733 F. Supp. 3d at 901 (rejecting Defendants' reasoning). And because Plaintiff did not consent, FAC ¶¶ 158, 193, 220, the party exception cannot defeat the ECPA claim.

## III. PLAINTIFF STATES A CLAIM UNDER CIPA § 638.51

CIPA defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). With this broad language in mind, courts in this District have found trackers similar to Defendants' to also be "pen registers" at the pleadings stage. *See*, *e.g.*, *Riganian*, 791 F. Supp. 3d at

1093-94; *Deivaprakash*, 798 F. Supp. 3d at 1104-05; *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *4-5 (N.D. Cal. Oct. 9, 2025); *Selby*, 2025 WL 2950164, at *4. Plaintiff alleges that the TikTok Pixel and Cookies "are pen registers because they are device[s] or process[es] that capture the "routing, addressing, or signaling information"—the IP address, geolocation, device information, and other persistent identifiers—from the electronic communications transmitted by Plaintiff's and California Subclass Members' computers or smartphones." FAC ¶¶ 217-219 (cleaned up).

Despite these authorities, Defendants merely state, without justification, that "the Pixel is not a pen register device" and cite only cases that considered whether the "TikTok software is [] a trap and trace device." MTD at 13-14. In fact courts have found Defendants' Tracker to be a "pen register" at the pleadings stage. *See, e.g.*, *Moody*, 742 F. Supp. 3d at 1076 (holding that allegations the "TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51"); *Camplisson*, 809 F. Supp. 3d at 1107 (finding plaintiffs sufficiently alleged TikTok Pixel constitutes a pen register); *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *8 (N.D. Cal. Jan. 27, 2026) (same). Regardless, Plaintiff addresses Defendants' arguments below.

**A. Plaintiff Properly Pleads In The Alternative**

Defendants argue that Plaintiff "pleads herself out" of a § 638.51 claim because the FAC alleges elsewhere that the tools capture "contents." MTD at 13. The argument conflates two distinct theories resting on two distinct categories of data. The § 631 wiretapping theory rests on content-bearing data including full-string URLs, button clicks, and cart events. FAC ¶¶ 90-102. The § 638.51 theory rests on non-content routing and addressing data including IP addresses, geolocation, and device identifiers. FAC ¶¶ 217-219. A single device may capture both, and a plaintiff may plead both. Fed. R. Civ. P. 8(d)(2)-(3) (permitting alternative and inconsistent claims).

Courts have sustained pen-register claims alongside wiretapping claims premised on the same trackers. *See*, *e.g.*, *Riganian*, 791 F. Supp. 3d at 1091-94; *Selby*, 2025 WL 2950164 at *4. To the extent Defendants invoke a rule requiring the theories to be pleaded "in the alternative," the FAC's separate counts resting on separate data satisfy any such requirement, and Rule 8(d) does not condition the pen-register claim on a "magic-words" disclaimer.

Defendants' reliance on *In re Apple Data Privacy Litig.*, 2026 WL 146025 (N.D. Cal. Jan.

20, 2026), does not require a different result. MTD at 14 n.11. The plaintiffs there failed to allege any non-content routing or addressing data captured by the device, so the only data pleaded was content—which cannot support a pen-register theory. Here, the FAC separately identifies the non-content data on which the § 638.51 claim rests: IP addresses, geolocation, device identifiers, email addresses, and other persistent routing and addressing information, FAC ¶¶ 217-219, as distinct from the content-bearing data underlying the § 631 claim—full-string URLs, button clicks, and cart events, FAC ¶¶ 90-102. Because a single tool can capture both categories of data, and Plaintiff predicates each claim on a different category, there is no inconsistency: the pen-register claim does not depend on the tools being incapable of capturing contents, only on their capturing the routing and addressing information the statute reaches. Cal. Penal Code § 638.50(b). Courts in this District routinely sustain both claims together on this basis. *See Riganian*, 791 F. Supp. 3d at 1091-94; *Selby*, 2025 WL 2950164, at *4.

Moreover, there is a growing consensus among courts that a tracker may be a "pen register" even if it records both "addressing" information *and* the "contents" of a communication, so long as it does not *only* "record[] … the contents of communications." *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1155 (N.D. Cal. 2025) (cleaned up); *see also*, *e.g.*, *Wiley v. Univ. Music Grp., Inc.*, 2025 WL 3654085, at *9 (N.D. Cal. Dec. 17, 2025) (rejecting argument that a "pen register" "cannot apply to devices that *also* collect the contents of a communication") (emphasis in original).

**B. This Court Has Already Held That § 638.51 Reaches Internet Trackers**

Defendants ask the Court to hold that § 638.51 does not apply to internet communications at all. MTD at 14-15. But "the text of a law controls over purported legislative intentions unmoored from any statutory text," and "the Court may not replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024); *Prang v. Los Angeles County Assessment Appeals Board*, 15 Cal. 5th 1152, 1180 (2024) ("Where statutory text is unambiguous and provides a clear answer, courts need go no further."). Here, the plain text is clear: "[t]he statutory text is deliberately expansive, designed to encompass new technologies and apply to conduct like that alleged here." *Fregosa*, 2025 WL 2886399, at *9. Indeed, "[i]f the drafters of Section 638.50 had intended for 'pen register' to be limited to telephone

technologies, they knew how to do so—as evidenced by other sections of CIPA where they imposed such limitations." *Gabrielli*, 2025 WL 1939957, at *11. Further, the California Legislature adopted the modern federal pen register definition, which undisputedly applies to the Internet. *Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *7 (N.D. Cal. May 21, 2026) ("The legislative history of the pen register provision thus supports a broad, rather than narrow, construction of the term pen register."). Based on this plain text, "*every* federal court to tackle the CIPA applicability question has rejected [Defendant's] position." *Fregosa*, 2026 WL 183857 at *2 (emphasis in original); *see also*, *e.g.*, *Torres v. Seatgeek, Inc.*, 2026 WL 1495202, at *8 (N.D. Cal. May 28, 2026) ("Many defendants have taken SeatGeek's position that CIPA applies only to tracking technology for phones and not the internet. None have succeeded in this district.").[2]

Defendants' citation to a different provision of the CIPA—Cal. Pen. Code § 638.52—does not affect this analysis. MTD at 14. As every federal court has held, that section "merely lists requirements relating to a particular type of pen register … But that does not alter the statutory definition of a pen register stated in § 638.50(b)." *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930 (N.D. Cal. 2024); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 41 (S.D.N.Y. 2025) ("The Court will not read the term "telephone" into Section 638.50.").

Defendants are correct that *Variety Media, LLC v. Superior Court*, Case No. B350578 (2d Dist. Ct. App.), will provide a California appellate court with the opportunity to determine whether CIPA's pen register provision applies to internet-tracking technologies like Defendants'. Unless that petition comes out in Defendants' favor, however, Defendants' "suggestion that the court chart a different path in this case" based on these same arguments and against the weight of authority cited above "is not persuasive." *Maketa v. Valnet Inc.*, 2026 WL 323126, at *1 (N.D. Cal. Feb. 6, 2026).

**C. There Is No Conflict With The CCPA**

Defendants fret that "[i]t would lead to 'absurd results' if the carefully calibrated opt-out regime [of the CCPA] . . . were overridden by an overreading of CIPA. A business could provide robust disclosure and a conspicuous [opt out in compliance with the CCPA] only to then run afoul

[2] Indeed, as Defendants admit, this Court has already rejected their argument. *See Echeverria-Corzan v. Torrid LLC*, No. 3:25-cv-06926-JD, Dkt. No. 35 (N.D. Cal. Feb. 26, 2026).

of CIPA." MTD at 14-15. Defendants' argument is based on a fallacy. The CCPA regulates entities like Defendants and provides Californians with the right to opt-out of *further* data collection. But the CIPA does *not* permit companies like Defendants to collect and disclose Californians' data without procuring consent or even telling them in the first place. *Gilligan*, 2026 WL 32259, at *3 (noting "the CCPA does not authorize a party to intercept communications without the communicator's knowledge or consent"). Quite the contrary, the CCPA states that "[a] business that controls the collection of a consumer's personal information shall, *at or before the point of collection*, inform consumers of" the types of data collected. Cal. Civ. Code § 1798.100(a) (emphasis added). Thus, the "CCPA and CIPA are complementary." *Mirmalek*, 2024 WL 5102709, at *5. Moreover, the CCPA provides that "in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." Cal. Civ. Code § 1798.175. Thus, "Defendants seem to be the ones" ignoring the statute's plain text, as the CIPA must govern in the event of a conflict. *Anderson v. National Collegiate Athletic Association*, 2026 WL 925519, at *9 (C.D. Cal. Mar. 25, 2026) ("[B]y interpreting CIPA as it does, the Court heeds the CCPA's instruction."); *Mirmalek*, 2024 WL 5102709, at *5 (same).

Finally, Defendants' repeated invocation of the dismissal of Plaintiff's separate action against Meta, including its § 638.51 and intrusion rulings (MTD at 2 n.2, 9-10), carries no preclusive or persuasive weight here. *Tsering v. Meta Platforms, Inc*,. involved a different defendant operating a different tracking tool, and issue preclusion does not apply because the claims here turn on TikTok-specific technology that was not before the *Meta* court. FAC ¶¶ 76-77, 118-126.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion. If the Court grants the Motion in any respect, Plaintiff respectfully requests leave to amend.[3]

---

[3] Should the Court find any allegation lacking specificity—for example, as to the particular content-bearing URLs Plaintiff visited or the technical mechanics of the Tools—Plaintiff can readily supply additional detail consistent with Rule 11, including specific pages on the identified websites and the manner in which the Pixel transmits data contemporaneously with the user's communications. Because such amendment would not be futile, any dismissal should be without prejudice and with leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Dated: June 29, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Max S. Roberts*

Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main St., Ste. 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: klynn@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*