VICTOR JIH, SBN 186515
WILSON SONSINI GOODRICH
& ROSATI, P.C.
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
vjih@wsgr.com

THOMAS R. WAKEFIELD, SBN 330121
WILSON SONSINI GOODRICH
& ROSATI, P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (424) 446-6900
twakefield@wsgr.com

MARK R. YOHALEM, SBN 243596
WILSON SONSINI GOODRICH
& ROSATI, P.C.
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
mark.yohalem@wsgr.com

ERIC T. KOHAN, SBN 325076
WILSON SONSINI GOODRICH
& ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
ekohan@wsgr.com

*Attorneys for Defendants*
*ByteDance Inc., TikTok Inc., &*
*TikTok USDS Joint Venture LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

LISA TSERING, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BYTEDANCE INC., TIKTOK, INC., and TIKTOK USDS JOINT VENTURE LLC,

Defendants.

Case No. 3:26-cv-01536-JD

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Judge: Hon. James Donato
Hearing Date: July 23, 2026
Hearing Time: 10:00 a.m.
Courtroom: 11

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........................................ 1

II. PLAINTIFF'S PRIVACY CLAIMS FAIL ........................................ 1

III. PLAINTIFF'S WIRETAPPING CLAIMS FAIL ........................................ 4

A. Plaintiff Does Not Plead Any *Contents* of Communications ........................................ 5

B. Plaintiff Does Not Plead Any Attempts to *Read* While *in Transit* ........................................ 6

IV. PLAINTIFF'S PEN-REGISTER CLAIM FAILS ........................................ 7

V. THE COURT SHOULD DENY FURTHER LEAVE TO AMEND. ........................................ 10

VI. CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 1

*Brown v. Google LLC*.
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 2, 3, 5

*Caltex Plastics, Inc. v. Raytheon Co.*,
2014 WL 12687419 (C.D. Cal. Apr. 24, 2014) .......... 1

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025) .......... 8

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) .......... 6

*Griffith v. TikTok, Inc.*,
2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) .......... 4, 5

*Griffith v. TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) .......... 1, 4, 11

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 9

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 6, 7

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
146 S. Ct. 1391 (2026) .......... 1

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 2

*Hohenshelt v. Super. Ct.*,
18 Cal. 5th 310 (2025) .......... 10

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 3

*In re Apple Data Priv. Litig.*,
824 F. Supp. 3d 888 (N.D. Cal. 2026) .......... 7, 8

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .......... 3, 4

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) .......... 8, 9

*In re USA Today Co., Internet Tracking Litig.*,
2026 WL 932655 (N.D. Cal. Apr. 6, 2026) .......... 2

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 5, 6

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 6

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 4

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 2

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) .......... 5

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 2

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 6

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 3

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) .......... 8

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 8

*Ortiz v. Foris Dax, Inc.*,
2026 WL 1430720 (N.D. Cal. May 21, 2026) .......... 2, 5

*People v. Woodhead*,
43 Cal. 3d 1002 (1987) .......... 9

*Perez v. Romantix Online, Inc.*,
2026 WL 1802589 (N.D. Cal. June 23, 2026) .......... 1

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 3

*R.C. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 5

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .......... 7

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 7

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 3, 8

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) .......... 5, 8

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026) .......... 8

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) .......... 9

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 7

*Tsering v. Meta Platforms, Inc.*,
2026 WL 1433958 (N.D. Cal. May 21, 2026) .......... 4

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......... 4

*Tsering v. Meta Platforms, Inc.*,
No. 25-cv-1611-RFL (N.D. Cal. Feb. 9, 2026) .......... 4

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) .......... 8

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) .......... 3

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .......... 10

**STATUTES**

18 U.S.C. § 2510 *et seq.* (“ECPA”) .......... 5

Cal. Civ. Code § 1798.100 *et seq.* (“CCPA”) .......... 9, 10

Cal. Civ. Code § 1798.175 .......... 10

Cal. Penal Code § 631(a) .......... 6, 7, 8, 9

Cal. Penal Code § 632 (“CIPA”) .......... 5

Cal. Penal Code § 638.50 .......... 7, 8

Cal. Penal Code § 638.51(a) .......... 9

## I. INTRODUCTION

The thrust of Defendants' Motion to Dismiss (Dkt. 32, "Mot.") was that the FAC[1] fails to identify sensitive or confidential information that the Pixel collected ***about Plaintiff***. The Opposition has little to say about that failure. At most, Plaintiff claims to have visited some web***sites*** that may use the Pixel in some way. But Plaintiff has repeatedly failed to identify what web***pages*** she allegedly visited, what information she allegedly provided to those webpages and what information was allegedly taken during her visit, and how that information might have been used to "profile" her in the absence of a registered TikTok account. Without such necessary information, the FAC fails to state a claim.

Plaintiff's primary response is to gesture toward allegations regarding data collection on the internet that have nothing to do ***with her***. She falls back on a supposed need for discovery, which she claims could flesh out the conclusions and generalizations of her formulaic complaint. But "[i]n order to proceed to discovery, a plaintiff must 'state a claim to relief that is plausible on its face.'" *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1399 (2026) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff was required to "allege plausible claims with well-pleaded facts before forcing [Defendants] to incur the expense of discovery." *Caltex Plastics, Inc. v. Raytheon Co.*, 2014 WL 12687419, at *6 (C.D. Cal. Apr. 24, 2014). Plaintiff has not done so. Nor should the Court relax the rules, particularly because (1) Plaintiff needs no discovery to accurately allege her own online activities and (2) years of litigation in *Griffith* showed that discovery did not bear out even better-pleaded claims.

The Court should grant Defendants' Motion and dismiss the FAC with prejudice.

## II. PLAINTIFF'S PRIVACY CLAIMS FAIL

As explained in the Motion and unanswered by the Opposition (Dkt. 38, "Opp."), the FAC lacks the allegations needed to establish a highly offensive intrusion on a reasonable expectation of privacy.

"Generally, the internet is not a place where users have a reasonable expectation of privacy." *Perez v. Romantix Online, Inc.*, 2026 WL 1802589, at *2 (N.D. Cal. June 23, 2026) (collecting cases). For that reason, allegations of online data collection, without more, are not enough; after all, California sets a "high bar" for privacy claims. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994); *see*

[1] "¶ __" refers to the First Amended Complaint (Dkt. 29, "FAC").

*also Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *4 (N.D. Cal. May 21, 2026). A valid claim requires ***sensitive*** data "that implicates a protectable privacy interest." *In re USA Today Co., Internet Tracking Litig.*, 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026).

The Opposition turns this settled law on its head. According to Plaintiff, essentially ***any*** data collection—however routine or innocuous—constitutes an egregious breach of social norms. *See* Opp. at 4-5. Even the cases Plaintiff cites do not support that position, whatever soundbites she takes from them. Take her lead case, *Brown v. Google LLC*. 685 F. Supp. 3d 909 (N.D. Cal. 2023). There, the court did decline to apply a "presumption that internet communications are not confidential," but that was because the plaintiffs had been using "Incognito mode"—a tool pitched as a privacy enhancement that nonetheless collected users' "sexual orientation, political or religious views, or upcoming big purchases." *Id.* at 938-39, 941 (quotation marks omitted). "That these communications occurred over the internet does not automatically mean that [the] plaintiffs gave up that expectation of privacy they had when they went Incognito." *Id.* at 939. Incognito mode changed the background presumption underlying California privacy law, but Plaintiff alleges nothing like the offer of Incognito mode here.

Without escaping the background rules governing privacy claims, the FAC must fail because—despite amending in the face of an initial motion to dismiss identifying this failing—Plaintiff has not alleged that TikTok collected any sensitive data from her. *See* Mot. 6-7. "[A] plaintiff must identify the 'specific personal information she disclosed that implicates a protectable privacy interest.'" *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1178-79 (N.D. Cal. 2025). URLs are not necessarily sensitive. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of URLs does "not meet the standard set by California courts"). URLs that contain full strings, for instance of search queries, ***could*** be sensitive, but it depends entirely on the URL—and here, Plaintiff has not provided a single specific URL that TikTok is alleged to have collected ***from her***. *See* Opp. 15 n.3 (claiming she could have alleged specific URLs had she wanted to, but recognizing she did not do so).

The Opposition fails to identify actionably sensitive information when it argues that Defendants collected (1) Plaintiff's "email address" and (2) "the detailed URLs of each property she viewed on Zillow." Opp. at 4 (citing ¶¶ 151-56). Neither is sensitive. Plaintiff makes her email address publicly available on her personal webpage, *see* Kohan Decl. Ex. 3, and even if she had not, courts routinely

reject the notion of a protected privacy interest "in such relatively quotidian private information as an email address," *see, e.g.*, *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1144 (E.D. Cal. 2025); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (same); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (same). As for the URLs, Plaintiff fails to provide the actual URLs she allegedly visited, and offers no explanation for how looking at a house listing on Zillow falls within a "sensitive sphere" of privacy. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (noting that there is nothing actionable in something analogous to a store clerk watching a shopper browse the aisle, and ruling that it is not enough to allege that "tracking software *could* be offensive in particular circumstances"). To the extent that Plaintiff claims generally that Defendants collected URLs from "sensitive" websites like Healthline.com and Western Union (*see* Opp. 7-8), she again fails to provide any URLs that were allegedly collected from her. In short, Plaintiff's privacy claims fail because she did not identify any of ***her*** sensitive data collected by Defendants.

Having failed to identify any sensitive data, Plaintiff fares no better with her retreat to the allegation that Defendants amassed a "profile" or "dossier" on her. *See* Opp. 3-4. Such a label is insufficient to force this case into the holding of *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 603 (9th Cir. 2020). In that case, the Ninth Circuit made clear that courts "must examine [1] whether the data itself is sensitive ***and*** [2] whether the manner it was collected—after users had logged out—violates social norms." *Id.* Plaintiff does not establish either requirement. As to the first factor, and as already discussed, she fails to identify any sensitive data about her collected by Defendants. That is nothing like the "cradle-to-grave" intimate details alleged in *Facebook*, 956 F.3d at 599. On the second factor, this case and *Facebook* are a study in contrasts—whereas Plaintiff alleges that TikTok candidly discloses its practices regarding data collection and use, ¶¶ 39 & n.17, 64 & n.42, Facebook was alleged to have falsely "represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway," 956 F.3d at 603; *see also Brown*, 685 F. Supp. 3d at 936 (turning on the allegedly misleading nature of "Incognito mode").[2]

---

[2] To prop up her profiling allegations, Plaintiff relies on cases addressing data brokers, Opp. 3, but these are inapposite. For instance, after *Facebook Tracking*, Plaintiff's most cited case is *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025). But in *Riganian*, the defendant ***confirmed*** it profiled the plaintiffs, who had received "subject access requests." *Id.* at 1082-83. The

*(Cont'd on next page)*

Plaintiff and her counsel just lost a similar profiling claim against Meta before Judge Lin in *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026). Plaintiff argues "[t]hat ruling addressed a different defendant, a different tool, and a different complaint," but Opp. 5., but none of these distinctions hold water. The "different defendant" was the ***same*** defendant at issue in *Facebook*—and yet even still, Plaintiff's profiling claim was inadequately pleaded. And as for the "different tool" and "different complaint," in both instances Plaintiff claimed the defendants' tools de-anonymized and profiled users.[3] Judge Lin well understood Plaintiff's claim to be that Meta had "monetize[d] [Plaintiff's] data by collecting it, creating [a] comprehensive user profile[], incorporating it into its advertising products, and selling it for advertising purposes." *Tsering*, 2026 WL 89320 at *3; *see also id.* at *1. Ultimately, the court tossed her lawsuit against Meta with prejudice, as should happen here. *See Tsering v. Meta Platforms, Inc.*, 2026 WL 1433958, at *2 (N.D. Cal. May 21, 2026).

Finally, it is worth noting that in *Griffith*, when the plaintiffs' specific allegations were tested, they could not be proved: "Plaintiffs have not produced evidence of any sensitive information Defendants collected from them. Nor have Plaintiffs shown that Defendants collected vast quantities of identifiable data from them that would allow Defendants to create the type of 'cradle-to-grave profiles' at issue in *Facebook Tracking*—much less that Defendants actually created such profiles." *Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *9 (C.D. Cal. Dec. 24, 2024).

For all these reasons, the privacy claims fail.

## III. PLAINTIFF'S WIRETAPPING CLAIMS FAIL

Plaintiff's Opposition fails to address the fatal flaws identified in the Motion, and instead spends

---

same is true of another of Plaintiff's leading cases. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 935 (N.D. Cal. 2023) ("Plaintiffs received a document from Oracle indicating that the company had tracked, compiled, and analyzed their web browsing and other activity, thereby creating an 'electronic profile' on them."). Defendants are not data brokers, Plaintiff does not allege she received anything saying she had been profiled, and the plaintiffs in *Griffith* who alleged profiling never presented any evidence of it, leading to their claims failing at summary judgment.

[3] An entire section was titled "Facebook Ensures that Collected Consumer Data Does Not Remain Anonymous." Third Amended Class Action Complaint at 18, *Tsering v. Meta Platforms, Inc.*, No. 25-cv-1611-RFL (N.D. Cal. Feb. 9, 2026), Dkt. No. 53. Plaintiff alleged that "Facebook can connect an ostensibly 'anonymous' ID … to an individual and then collect data on their interests and activities. Facebook can then create a comprehensive consumer profile by combing through this data." *Id.* ¶ 86; *accord, e.g., id.* ¶ 7 (indicating Facebook disclosed tracking of "contact … information"); *id.* ¶ 72 ("even supposedly anonymized location tracking can reveal individual identity").

pages opposing arguments Defendants did not make. *See* Opp. at 10-11 (arguing against the party exception to wiretapping liability).[4] As explained in the Motion, the FAC is doubly defective.

**A. Plaintiff Does Not Plead Any *Contents* of Communications**

Because she did not identify any specific URL visited by her and received by Defendant through their Tools, Plaintiff failed to allege that she "***personally*** engaged in qualifying communications" that could state a claimed under CIPA and ECPA. *Ortiz*, 2026 WL 1430720, at *5 (emphasis added). The Opposition's invocation of an example URL from Zillow does not help her, Opp. 8 (citing ¶ 94), because there is no allegation that ***she*** visited that URL, *see* ¶ 94. A plaintiff must do more than show the "types of full-string URL" that ***could*** have been taken, so Plaintiff's failure to allege that she "visited the webpages provided in the examples" is fatal to her wiretapping claims. *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (quotation marks omitted). The Court can end its analysis of the wiretapping claims there.

But even if Plaintiff could rely on example URLs that she does not allege to have personally visited (and she cannot), Plaintiff cites no authority holding that the Zillow URL in the FAC contains the "content" of a communication. Under binding law, a URL is not the "content[]" of a communication unless it contains "a search term or similar communication made by the user." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1109 (9th Cir. 2014). Plaintiff's own cases agree.[5] As Judge Blumenfeld observed with respect to the specific tool at issue here, "determining whether a URL constitutes 'contents' turns on the specific information Defendants obtain from each website that uses the Pixel." *Griffith*, 2024 WL 4308813, at *7. Here, Plaintiff does not allege that Zillow's URLs contain search terms or other user inputs, *see* ¶¶ 134-141, and the URL she provides does not contain them—it is simply the listing URL for a property, *see* ¶ 94. Thus, even her lone example—which, again, is not a URL she personally visited—fails to allege the taking of "contents."

---

[4] Plaintiff's claim may fail for the reasons she attempts to rebut, but such failings cannot be shown from the pleadings, so Defendants did not move to dismiss on those grounds.

[5] *See Brown*, 685 F. Supp. 3d at 935 (N.D. Cal. 2023) (URL was content because it contained "search queries"); *R.C. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (same as to "URLs which disclose search terms"); *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025) (same as to URLs that reflect "search queries and specific items Plaintiffs viewed").

Finally, Plaintiff's one-off references to other types of data that Defendants purportedly took from her are not "contents" either. She claims that Defendants took her "email address" through Zillow, Opp. at 8 (quoting ¶ 153), but email addresses are not "contents," *see Zynga*, 750 F.3d at 1108. She next claims that so-called "Button Click" events are "contents," but that is not true either, *see Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) ("Navigating through a website's multiple pages is not the substance of a communication[.]"), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025); *see also Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833. 845 (S.D. Cal. 2024) ("button clicks" are "more akin to the 'record' information"). In any event, she does not allege that Zillow or any of the other websites that she visited (¶ 151) intercepted ***her*** "Button Click" information.

Without allegations of specific intercepted content, the wiretapping claims fail.

### B. Plaintiff Does Not Plead Any Attempts to *Read* While *in Transit*

Plaintiff's wiretapping claims fail for two additional, independent reasons as well: she failed to plead facts about how Defendants allegedly "read[], or attempt[] to read" the contents of her communications while they are "in transit." Cal. Penal Code § 631(a). These two failings are best explained in reverse order.

In Transit. Plaintiff failed to adequately allege, as is required, that an interception occurred while the communication was "in transit"—meaning "during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Plaintiff failed to allege "how the software code embedded on Defendant's website works" to accomplish such an in-transit interception. *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024).

Plaintiff merely "restate[s] the statutory language, which is insufficient under the plausibility standard," *id*. at 1126 & n.12 (collecting cases), when she points to a single paragraph in the FAC where she alleges that the Pixel is "triggered simultaneously with the user's corresponding action on the website," Opp. at 9 (citing ¶ 192). Plaintiff's own cases underscore what is missing in the FAC: the detail needed to show how the communications are purportedly captured "in transit." *See* Opp. 9. In *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019), the plaintiff alleged that the defendant's technology created and sent a "parallel signal." In *James v. Walt Disney*

*Co.*, 701 F. Supp. 3d 942, 961 (N.D. Cal. 2023), the plaintiff likewise alleged the technical specifics of simultaneity. Such allegations are missing here.

Read. Further, Plaintiff also failed to allege that Defendants "read[], or attempt[ed] to read[] or to learn the contents" of her communications while they were in transit. Cal. Penal Code § 631(a). Alleging only a "hypothetical future attempt to read or understand the meaning of a communication" does not meet this element. *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *6 (N.D. Cal. Apr. 17, 2025). The sole allegation invoked by the Opposition merely quotes the statutory requirement. *See* Opp. 10 (citing ¶ 190). As noted, this is not enough. *See Heiting*, 728 F. Supp. at 1126 & n.12. And even if such a conclusory allegation were enough as to the reading requirement, the Court could not reasonably infer that the reading occurred ***in transit***, because Plaintiff specifically alleges not of real-time reading, but rather that Defendants later aggregate data to create advertising profiles. *See* ¶ 130. This theory is mistaken, but regardless, alleging interception and storage for ***future*** use does not satisfy the read-in-transit element. *See R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (receipt of browsing data for later "processing" insufficient to state a § 631(a) claim).

## IV. PLAINTIFF'S PEN-REGISTER CLAIM FAILS

Plaintiff's pen-register claim fails for two independent reasons: (1) Plaintiff's own allegations show the Tools are not a "pen register" and (2) CIPA should not apply to internet communications.

***First***, contrary to Plaintiff's assertion, the definition of a pen register expressly excludes any device that collects "the contents of a communication." Cal. Penal Code § 638.50(b). Her claim that the Tools collect "content-bearing data," as well as "non-content routing and addressing data," is fatal to this claim. Opp. 12. This is not a situation where she can plead "in the alternative." *Id.* Plaintiff can plead in the alternative, but she cannot rely on "inconsistent allegations," *In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 898 (N.D. Cal. 2026)—and her allegations are that the Tools ***do*** collect "the contents of [] electronic communications," ¶¶ 190, 194. Those allegations are expressly incorporated into the pen-register claim, ¶ 208, which furthermore contains no allegation to the contrary. Both *Apple* and basic pleading rules dispose of this claim.[6]

[6] Plaintiff tries to distinguish *Apple* by claiming the plaintiffs there collected only "contents," and not "record" information, Opp. at 12-13, but that is wrong. *See* 824 F. Supp. 3d at 895 (explaining that the plaintiff alleged that Apple's mobile applications "record addressing or signaling information").

Plaintiff is wrong in asserting that there is a "growing consensus" that a device that records the contents of communications can be a pen register. In just the last year, courts have held that a plaintiff cannot plead that the TikTok Pixel both takes the contents of communications and is a "trap and trace device," which similarly excludes devices that collect the "contents of a communication." *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4-5 (N.D. Cal. June 24, 2025); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 851-52 (N.D. Cal. 2025) (same). Most of Plaintiff's cases to the contrary either (1) did not involve a plaintiff also alleging a violation of § 631(a) of CIPA, as Plaintiff does here or (2) did not meaningfully analyze § 638.50's exception clause. *See Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024) (no § 631(a) claim); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1107 (S.D. Cal. 2025) (same); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1093 (N.D. Cal. 2025) (no analysis of exception clause); *Selby*, 2025 WL 2950164, at *4 (no analysis of exception clause).

One decision cited by Plaintiff did attempt to analyze whether a plaintiff can allege a pen register that collects content information, but *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147 (N.D. Cal. 2025),[7] does not establish a consensus and it is on the wrong side of the split of authority. There, the court deemed § 638.50(b) to be ambiguous, such that a "device … that records … dialing, routing, addressing, or signaling information …, *but not the contents of a communication*" could be read to mean a "device … that records or decodes dialing, routing, addressing, or signaling information …, *but not* [a device that records ***only***] *the contents of a communication*." *Id.* at 1153. This violates the cardinal rule of statutory construction against rendering language surplusage, *People v. Woodhead*, 43 Cal. 3d 1002, 1010 (1987): "a device that records *only* 'the contents of a communication'" is already excluded from the definition of pen register because it does not record "dialing, routing, addressing, or signaling information." The "but not" language only has effect if it applies to devices that would, in its absence, meet the definition: namely, those that record ***both*** "dialing, routing, addressing, or signaling information" ***and*** "contents."

[7] *See also Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 920 (N.D. Cal. 2026) (incorporating *Meta Pixel Tax Filing*'s reasoning); *Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *9 (N.D. Cal. Dec. 17, 2025) (same).

Giving effect to the "but not" language creates no loophole, *contra In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1153-54, because a device that collects the "contents" of a communication may be subject to liability under § 631(a).[8] Regardless, it is not the usual practice of courts to render parts of criminal statutes nugatory as to expand their scope—indeed, even if the "but not" language were ambiguous (which it is not), "[t]he 'longstanding' rule of lenity requires us to resolve any ambiguity in the scope of a criminal statute in favor of the defendant." *United States v. Miranda-Lopez*, 532 F.3d 1034, 1040 (9th Cir. 2008). The rule of lenity is not needed here, because the plain text and the canon against surplusage do the necessary work. But if the Court deemed the language ambiguous, it should heed the strong policy considerations against interpreting a vague law to criminalize additional conduct. *Compare Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025) (applying rule of lenity to "adopt a narrower but equally reasonable interpretation of CIPA—one that does not encompass the conduct at issue in this case"), *with Riganian*, 791 F. Supp. 3d at 1093-94 (declining to apply the rule of lenity on the ground it deemed the CIPA language unambiguous). It is hard to imagine a court eliminating "but not" requirement in any other criminal context.

***Second***, CIPA does not apply to internet communications. This position is in the minority among judicial decisions, and Defendants acknowledge that this Court has come out the other way, but it is the correct interpretation, as recognized by Judge Bybee. *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *2-3 (9th Cir. July 9, 2025) (Bybee, J., concurring in part).

Plaintiff claims that any concern over a conflict between CIPA and the California Consumer Protection Act ("CCPA") is misplaced, Opp. 14-15, but this misreads both CIPA and the CCPA. Under Plaintiff's misinterpretation of CIPA, ***any*** collection of ***any*** information—contents under § 631(a) or non-contents under § 638.51(a)—is unlawful without prior consent. Yet the CCPA, along with its Legislature-passed and voter-approved amendments, Mot. 14 n.12, does not require prior consent for data collection. Indeed, Plaintiff acknowledges the CCPA requires companies only to "***inform***

[8] The *Meta Pixel Tax Filing* court was also concerned that a company could avoid CIPA liability entirely by using a device that (1) collects both record and content information while also (2) not reading or attempting to read the contents of communications while in transit. 793 F. Supp. 3d at 1153-54. But this, too, is not a loophole—it is just an example of a company abiding by the text of the statute. The Legislature could have criminalized the mere in-transit interception of the contents of a communication without a "reading" requirement, but it chose not to.

consumers of" the types of data collected "at or before the point of collection," *i.e.*, it does not require further manifestation of consent. *See* Cal. Civ. Code § 1798.100(a) (emphasis added). And while Plaintiff argues that the CCPA requires deference to statutes that "afford the greatest protection for the right of privacy for consumers," Cal. Civ. Code § 1798.175, it would make no sense for the Legislature to put this provision into the CCPA if CIPA already required affirmative consent before any data collection. Plaintiff's interpretation of CIPA combined with § 1798.175 renders the CCPA a near nullity, contrary to the California rule that the courts must "construe every statute with reference to the whole system of law of which it is part, so that all may be harmonized and anomalies avoided." *Hohenshelt v. Super. Ct.*, 18 Cal. 5th 310, 332 (2025).

## V. THE COURT SHOULD DENY FURTHER LEAVE TO AMEND.

Plaintiff should not be given a further opportunity to amend, as she already took the opportunity to amend the complaint ***after*** Defendants identified the shortcomings of her claims in the initial motion to dismiss. Plaintiff's footnote requesting another amendment fails to explain why she did not add the requisite "particular content-bearing URLs Plaintiff visited or the technical mechanics of the Tools … including specific pages on the identified websites and the manner in which the Pixel transmits data contemporaneously with the user's communications" in her prior amendment. Opp. 15 n.3. That deficiency was laid out in detail in the first motion to dismiss, which prompted her amendment. *See* Dkt. 23. Her unjustified request, "buried in [a] footnote[]" and supported "with little authority or discussion" should "not be considered by the Court." Judge Donato Standing Order for Civil Cases ¶ 22. And even if considered, the Court should apply the usual presumption that she has "no additional facts to plead," *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), because she gave no explanation in the Opposition for why such facts were not already alleged or what the specific allegations actually would be. Plaintiff delayed resolution of Defendants' motions by weeks or more by mooting them with a barely amended complaint. *See* Dkt. 34-7 (redline of Compl. to FAC). If the FAC failed to address defects Plaintiff has known about for months, that should end this case.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motion to Dismiss be granted without leave to amend.

Dated: July 6, 2026

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

By: */s/ Mark R. Yohalem*
Mark R. Yohalem

*Attorneys for Defendants*
*ByteDance Inc., TikTok Inc., &*
*TikTok USDS Joint Venture LLC*