VICTOR JIH, SBN 186515
WILSON SONSINI GOODRICH
& ROSATI, P.C.
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
vjih@wsgr.com

THOMAS R. WAKEFIELD, SBN 330121
WILSON SONSINI GOODRICH
& ROSATI, P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (424) 446-6900
twakefield@wsgr.com

MARK R. YOHALEM, SBN 243596
WILSON SONSINI GOODRICH
& ROSATI, P.C.
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
mark.yohalem@wsgr.com

ERIC T. KOHAN, SBN 325076
WILSON SONSINI GOODRICH
& ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
ekohan@wsgr.com

*Attorneys for Defendants*
*ByteDance Inc., TikTok Inc., &*
*TikTok USDS Joint Venture LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

LISA TSERING, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BYTEDANCE INC., TIKTOK, INC., and TIKTOK USDS JOINT VENTURE LLC,

Defendants.

Case No. 3:26-cv-01536-JD

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER**

Judge: Hon. James Donato
Hearing Date: July 23, 2026
Hearing Time: 10:00 a.m.
Courtroom: 11

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. THE COURT SHOULD TRANSFER UNDER THE FIRST-TO-FILE RULE ..... 2

A. The Settlement of *Griffith* Does Not Defeat the First-to-File Rule ..... 2

B. The Parties Are Sufficiently Similar for the First-to-File Rule ..... 4

III. THE COURT LIKEWISE SHOULD TRANSFER UNDER SECTION 1404(a) ..... 5

A. Just Recently, Plaintiff Herself Successfully Moved Under Section 1404(a) to Transfer a Privacy Class Action from this District to the Central District ..... 5

B. In this Putative Class Action, Plaintiff's Choice of Forum Receives Less Weight ..... 6

C. The Private and Public Factors Favor Transfer ..... 7

IV. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Activision Blizzard, Inc. v. Acceleration Bay LLC*,
2016 WL 4548985 (N.D. Cal. Sept. 1, 2016) .......... 4

*Bazrganian v. Mercedes-Benz USA, LLC*,
2017 WL 4990517 (C.D. Cal. Oct. 31, 2017) .......... 5

*Couture v. Openai Global, LLC*,
26-CV-3000-H-GC (S.D. Cal.) .......... 7

*Emps.' Ret. Sys. of City of St. Petersburg, Fla. v. Teva Pharm. Indus. Ltd.*,
2019 WL 5485549 (E.D. Pa. Oct. 8, 2019) .......... 5

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 8

*Hawkins v. Gerber Prods. Co.*,
924 F. Supp. 2d 1208 (S.D. Cal. 2013) .......... 8

*Haynes v. World Wrestling Ent., Inc.*,
2015 WL 3905281 (D. Or. June 25, 2015) .......... 6

*Hernandez v. Graebel Van Lines*,
761 F. Supp. 983 (E.D.N.Y. 1991) .......... 8

*Hyundai Motor Co. v. Hyundai Tech. Grp., Inc.*,
2023 WL 11950485 (N.D. Cal. Sept. 11, 2023) .......... 9

*Lim v. OpenAI Global, LLC*,
26-CV-4063-VC (N.D. Cal.) .......... 7

*Linear Tech. Corp. v. Analog Devices, Inc.*,
1995 WL 225672 (N.D. Cal. Mar. 10, 1995) .......... 9

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir. 1987) .......... 6

*Madani v. Shell Oil Co.*,
2008 WL 268986 (N.D. Cal. Jan. 30, 2008) .......... 1, 7

*Marcelo v. Amazon.com, Inc.*,
2023 WL 1069880 (N.D. Cal. Jan. 27, 2023) .......... 4

*Meza v. Procter & Gamble Co.*,
2023 WL 3267861 (C.D. Cal. Apr. 27, 2023) .......... 8

*Molander v. Google LLC*,
473 F. Supp. 3d 1013 (N.D. Cal. 2020) .......... 1, 2, 3, 4

*Park v. Dole Fresh Vegetables, Inc.*,
964 F. Supp. 2d 1088 (N.D. Cal. 2013) .......... 6

*Peak v. Green Tree Fin. Servicing Corp.*,
2000 WL 973685 (N.D. Cal. July 7, 2000) .......... 3

*Pierucci v. Homes.com Inc.*,
2020 WL 5439534 (D. Ariz. Sept. 10, 2020) .......... 9

*Retina Assocs. Med. Grp., Inc. v. Olson Rsch. Grp., Inc.*,
2019 WL 3240110 (C.D. Cal. Mar. 20, 2019) .......... 5

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) .......... 8, 9

*Senne v. Kansas City Royals Baseball Corp.*,
105 F. Supp. 3d 981 (N.D. Cal. 2015) .......... 6, 7

*Sharpe v. GT's Living Foods, LLC*,
2024 WL 4101910 (C.D. Cal. June 21, 2024) .......... 3

*Shore to Shore Props., LLC v. Allied World Assur*ance,
2011 WL 4344177 (N.D. Cal. Sept. 15, 2011) .......... 9

*TransPerfect Glob., Inc. v. Motionpoint Corp.*,
2010 WL 3619565 (N.D. Cal. Sept. 13, 2010) .......... 8

*Tsering v. Magnite, Inc.*
25-CV-32201-EMC (N.D. Cal.) .......... 5, 6, 9

*Tsering v. Triple Lift, Inc.*,
25-cv-9147-MMC (N.D. Cal.) .......... 7

*Walters v. Famous Transports, Inc.*,
488 F. Supp. 3d 930 (N.D. Cal. 2020) .......... 9

*Young v. L'Oreal USA, Inc.*,
526 F. Supp. 3d 700 (N.D. Cal. 2021) .......... 2, 3, 4

**STATUTES**

28 U.S.C. § 1404(a) .......... 1, 2, 5, 9

**RULES**

Local Rule 3-12 .......... 3

Local Rule 83-1.3 .......... 3

Local Rule 83-1.4 .......... 3

## I. INTRODUCTION

By presiding over the *Griffith* litigation, Judge Blumenfeld in the Central District of California became intimately familiar with the factual and legal issues presented by privacy claims against TikTok and ByteDance based on the Pixel and EAPI. Judge Blumenfeld oversaw thorough technology presentations (*Griffith* Dkt. No. 32, 44), reviewed hundreds of pages of briefs and expert reports, and conducted hours of hearings, then issued lengthy rulings on the merits of the claims raised here (on the pleadings and at summary judgment), the feasibility of certifying such claims for class treatment, and the appropriate approach to discovery in connection with such claims. As decisions in this District recognize (*see infra* Section II.A), the fact that *Griffith* is on appeal, and settled after this case was filed, does not diminish Judge Blumenfeld's experience with these issues or the risk of conflicting rulings.

"[F]ailure to apply the first-to-file rule would squander the [two] years of earlier litigation and would force this Court to duplicate Judge [Blumenfeld's] work, all while risking conflicting judgments." *Molander v. Google LLC*, 473 F. Supp. 3d 1013, 1019-20 (N.D. Cal. 2020). And setting aside the first-to-file rule, transfer is warranted for the same reason under Section 1404(a): "[I]n the event of a transfer, the action would almost certainly be reassigned to Judge [Blumenfeld] under related case procedures. Judge [Blumenfeld] presided over [*Griffith*] for [nearly two] years, issued detailed written orders regarding the merits of that case, and is presumably more familiar than this Court with underlying factual contentions that are common to both actions." *Madani v. Shell Oil Co.*, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008). That is particularly so because the Central District, which resolves cases faster, is where much of the putative class agreed to bring claims, where the source code can be reviewed, and where two Defendants have their principal places of business.

Against these compelling reasons to transfer, Plaintiff identifies no meaningful downside to this case being heard in the Central District. Just last year, Plaintiff and her counsel moved to transfer another putative privacy class action from this District to the Central District. And Plaintiff's counsel has made a practice of voluntarily dismissing putative privacy class actions following judicial assignment in this District, then refiling those cases in the Central District. In addition to showing it would be no hardship for Plaintiff and her counsel to litigate in the Central District, this apparent judge-shopping "provides a strong reason to transfer this case to the Central District." *Madani*, 2008 WL

268986, at *3. So too does Plaintiff's insistence that this Court cannot heed the teachings of cases that have rejected privacy claims involving "a different defendant [and] a different tool" because "the claims here turn on TikTok-specific technology." Opposition to Motion to Dismiss (Dkt. 38, "MTD Opp.") 5, 15. If her claims indeed turn on TikTok's specific technologies, that is all the more reason to value Judge Blumenfeld's experience.

The Court should transfer this case to the Central District.

## II. THE COURT SHOULD TRANSFER UNDER THE FIRST-TO-FILE RULE

Neither of the two bases on which Plaintiff opposes the first-to-file rule is correct.[1] Opposition (Dkt. 37, "Opp.") 2-5. To the contrary, (A) the rule remains applicable even though *Griffith* settled after this suit was filed, and (B) potential differences in the putative classes do not defeat the similarity of the parties in the two actions. *See* Opp. 2-5.

### A. The Settlement of *Griffith* Does Not Defeat the First-to-File Rule

There is no dispute that *Griffith* was the first-filed putative class action asserting these privacy claims against TikTok based on the operation of the Pixel and EAPI. At the time Plaintiff filed this case, *Griffith* was pending in the Ninth Circuit. Indeed, *Griffith* remains pending today, although it has settled and should be dismissed. Regardless, it is blackletter law that "a court is not stripped of its discretion to apply the first-to-file rule even though the first-filed action is no longer pending." *Young v. L'Oreal USA, Inc.*, 526 F. Supp. 3d 700, 706 (N.D. Cal. 2021). And common sense dictates that the considerations of economy and consistency remain relevant even if *Griffith* is no longer pending by the time this Motion is decided.

***First***, a district judge has ***more*** experience, not less, at the end of years-long litigation, and there is a greater risk of conflicting decisions where—as here—the first-filed case proceeded deep into litigation and gave rise to numerous detailed merits rulings. That is what *Molander* recognized in

[1] Plaintiff also makes an "equitable" argument for not applying the rule, but this amounts to a contention that the Court can ignore the first-to-file rule on bases that would fail even under the general Section 1404(a) analysis: that a putative class-action representative chose this forum and resides here, and one of three Defendants has its principal place of business here. (Opp. 5, 9.) Making such an exception would gut the first-to-file rule, and Plaintiff cites no case that has done so: *Alltrade*, *Pacesetter*, and *Ruckus* are all cases where the first-to-file rule was ***applied***, not rejected, and *Micron* considered a different circuit's different legal framework under very different circumstances.

applying the first-to-file rule (despite the first-filed case being dismissed and on appeal) and rejecting the same argument made by Plaintiff. *See* 473 F. Supp. 3d at 1019-20; *accord Young*, 526 F. Supp. 3d at 706. Plaintiff also takes a blinkered view of efficiency, arguing that, with *Griffith* soon to be closed, there is "no proceeding whose efficiency transfer could promote." Opp. 3. But of course, the question is not the "judicial efficiency" and "risk of conflicting judgments" in *Griffith*, but in "this case," *Peak v. Green Tree Fin. Servicing Corp.*, 2000 WL 973685, at *2 (N.D. Cal. July 7, 2000), and it cannot be seriously disputed that efficiency and consistency would be promoted by ***this case*** being before a court with nearly two years' experience considering these privacy claims as applied to this "TikTok-specific technology."[2] MTD Opp. 15.

***Second***, Plaintiff's contention that prior cases lose all relevancy once they are no longer pending is hard to reconcile with the Northern District Local Rule directing parties to identify related cases. Similar to how the first-to-file rule operates across districts, Local Rule 3-12(a)(1) & (a)(2) operates within the District when "[t]he actions concern substantially the same parties, property, transaction, or event" and "[i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." If Plaintiff were correct that relation to a resolved case cannot promote efficiency or reduce the risk of conflicting rulings, Local Rule 3-12 would apply only when the earlier case is still pending. But it expressly applies when the later case is "related to an action which is ***or was*** pending in this District." L.R. 3-12(b) (emphasis added).[3] That would seem to reflect an understanding that efficiency may be promoted, and conflicting decisions avoided, by sending a new case to a judge who presided over a closed one.

---

[2] If the FAC were to survive dismissal and enter discovery (it should not), Defendants would expedite discovery by re-producing the *Griffith* production. That would be far more efficient than re-assembling from scratch the same corpus of documents—*i.e.*, millions of pages explaining the workings of the Pixel and EAPI. That is also all the more reason to send this case to Judge Blumenfeld, before whom that discovery was originally assembled and produced.

[3] If this case had been filed in the Central District, Plaintiff presumably would have filed a related case notice for *Griffith*. *See* Central District L.R. 83-1.3, 83-1.4; *see also Sharpe v. GT's Living Foods, LLC*, 2024 WL 4101910, at *4 (C.D. Cal. June 21, 2024) (chastising plaintiff's counsel for failing to relate to their tagalong case to a closed case as "[t]he issues and concerns raised in this Order perhaps could have been avoided if Bursor had simply filed a Notice of Related Case pursuant to Local Rule 83-1.3 as to the [prior] Action at the time it filed this action").

***Third***, courts in this District have repeatedly rejected the argument raised by Plaintiff—and the very cases Plaintiff cites in favor of it—where, as here, the district court decided the first-filed case on the merits. *Compare* Opp. 3 (citing *Executive Law Group*, *Alul*, *ASUSTek*, and *Wallerstein*), *with Young*, 526 F. Supp. 3d at 706-07 (explaining that in *Executive Law Group*, "the first-filed action was dismissed on jurisdictional grounds and not on the merits" and in *Alul*, the voluntary dismissal without prejudice "of the first-filed action did not result in unfavorable rulings while it was active"); *Molander*, 437 F. Supp. 3d at 1019-20 (explaining that "in *ASUSTeK* … the first-filed action was dismissed just four months (on personal jurisdiction grounds) after it was filed," thereby "address[ing] only the plaintiff's contacts with the forum," which "would have had little impact on the latter-filed case"); *see also Activision Blizzard, Inc. v. Acceleration Bay LLC*, 2016 WL 4548985, at *4-5 (N.D. Cal. Sept. 1, 2016) (transferring after deeming "*Wallerstein* and *ASUSTeK*" inapplicable and rejecting the plaintiffs' argument that the first-filed "actions [could] not be considered first-filed because they are no longer pending"). Plaintiff has identified no case ruling that a first-filed case that resolved merits issues (like *Griffith*) can be disregarded simply because it was resolved before the transfer motion was decided.

**B. The Parties Are Sufficiently Similar for the First-to-File Rule**

Misunderstanding what it means for the parties to be similar, Plaintiff suggests the cases do not "overlap" because no class was certified in *Griffith* and because her putative class period is different from the putative class period in *Griffith*. Opp. 4-5. Plaintiff is wrong.

Unable to cite any case that held either of those propositions, Plaintiff merely attempts to distinguish *Marcelo v. Amazon.com, Inc.*, 2023 WL 1069880, at *2 (N.D. Cal. Jan. 27, 2023)—which applied the first-to-file rule even though no class had been certified in the first case—on the ground that there, it was still ***possible*** that a class could have been certified in the first case when the second suit was brought. Opp. 4-5. But that was true here, too: when Plaintiff filed this suit, the *Griffith* plaintiffs were still asking the Ninth Circuit to reverse the denial of class certification. And more fundamentally, the similarity of the cases—giving rise to concerns about consistency and efficiency—turns on the nature of the putative classes, not on whether a class was ultimately certified. After all, seeking certification in a second suit of a class that was rejected in the first suit is an effort to generate inconsistency, which the first-to-file rule is meant to stop.

Both *Griffith* and this case involve putative class privacy claims brought against Defendants for the operation of the Pixel and EAPI. Plaintiff does not dispute that she would have been a class member in *Griffith*. Nor does she contend that the composition of the *Griffith* putative class would materially differ from the composition of her putative class—she does not claim, for instance, that entirely different groups of people encountered the Pixel and EAPI during these different class periods, and reason counsels otherwise. "That the class periods differ … does not preclude an application of the first-to-file rule because the proposed classes in class action lawsuits are substantially similar where both classes seek to represent at least some of the same individuals." *Retina Assocs. Med. Grp., Inc. v. Olson Rsch. Grp., Inc.*, 2019 WL 3240110, at *3 (C.D. Cal. Mar. 20, 2019) (cleaned up) (11 months' difference); *accord, e.g., Emps.' Ret. Sys. of City of St. Petersburg, Fla. v. Teva Pharm. Indus. Ltd.*, 2019 WL 5485549, at *5 (E.D. Pa. Oct. 8, 2019). What matters is "overlap in potential class members." *Bazrganian v. Mercedes-Benz USA, LLC*, 2017 WL 4990517, at *3 (C.D. Cal. Oct. 31, 2017).

## III. THE COURT LIKEWISE SHOULD TRANSFER UNDER SECTION 1404(A)

Plaintiff's Opposition fails to show that the private and public factors favor the Northern District. As set forth in the Motion, those factors favor the Central District.

### A. Just Recently, Plaintiff Herself Successfully Moved Under Section 1404(a) to Transfer a Privacy Class Action from this District to the Central District

Before addressing Plaintiff's mistaken arguments in Opposition, Defendants note that Plaintiff is now on the opposite side of her own position in another putative privacy class action. In *Tsering v. Magnite, Inc.* 25-CV-32201-EMC (N.D. Cal.) ("*Magnite*"), Plaintiff—represented by the same counsel—brought the same causes of action against a data broker in a complaint that is, in parts, verbatim identical to the FAC. *Mangite* Dkt. No. 1. There, however, Plaintiff asked the court via stipulation to transfer her case to the Central District, where "a similar putative class action" had been brought. *Magnite* Dkt. No. 16 at 2. Plaintiff stipulated that transfer was warranted on grounds that apply equally here: (1) "both complaints posit that [the defendant's] targeted advertising practices amount to unlawful 'wiretapping' …, use of a 'trap and trace device' …, and/or invasions of privacy"; (2) "the putative classes in the two cases both include all California residents whose personal information or communications were collected by [the defendant] via the challenged online advertising technologies";

and (3) transfer was warranted "for the convenience of the parties and witnesses, to avoid inconsistent legal and factual rulings, and in the interests of justice and judicial economy." *Id.* at 2-3. The most salient difference appears to be the judges to whom the respective cases were assigned in the two districts, and the fact that the Central District judge had not rejected the claims against Magnite.

To be clear, Defendants do not contend that Plaintiff is estopped by the relief she secured in *Magnite*, only that it underscores the policy considerations relevant to this Motion and undercuts Plaintiff's claim that "there is no evidence that [she has] engaged in forum shopping." Opp. 7.

**B. In this Putative Class Action, Plaintiff's Choice of Forum Receives Less Weight**

Plaintiff primarily argues that her decision to sue in this District must be given great weight, but that is not so for a putative class action, where the "degree of deference is substantially diminished." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1094 (N.D. Cal. 2013); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Plaintiff's key case—*Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981 (N.D. Cal. 2015)—is not to the contrary.

*Senne* merely "afford[ed] ***some*** deference to Plaintiffs' choice of forum," while acknowledging that their choice "is given less weight" in the class-action context. 105 F. Supp. 3d at 1058-59 (emphasis added). The Motion already recognized that some deference exists even in a putative class action, but explained that "Plaintiff's choice of forum is outweighed" here. Mot. 11-12. Moreover, "[w]hatever remaining deference that is accorded plaintiff's choice of forum is further eroded by evidence in the record that many of the putative class members are subject to mandatory forum selection clauses," *Haynes v. World Wrestling Ent., Inc.*, 2015 WL 3905281, at *3 (D. Or. June 25, 2015), *aff'd*, 2015 WL 4542526 (D. Or. July 27, 2015), and the clause agreed to by registered TikTok users requires disputes to be heard in the Central District. Kohan Decl. Ex. 1 § 8.2. The point is not that this clause "binds" Plaintiff, *contra* Opp. 8, but that much of her putative class chose the Central District, not this District, which further tilts the balance against her choice of this District.

For two other reasons, *Senne* hurts—rather than helps—Plaintiff's argument.

***First***, *Senne* recognized that a plaintiff's choice of forum would receive only "***minimal*** deference if the operative facts had not occurred within the forum." 105 F. Supp. 3d at 1058-59 (emphasis added). Plaintiff invokes this language as helping her, Opp. 7, but she has not alleged or

even argued that the operative conduct occurred in this District. Even as to her own conduct, Plaintiff says merely that it occurred "in California," and both districts at issue here are in California. *See* FAC ¶ 5 ("While in California, Plaintiff Tsering visited numerous websites …."); *accord* Opp. 7. Perhaps more importantly, nothing in the FAC or Opposition actually says that the "operative facts" underlying the alleged ***wrongdoing*** occurred at Plaintiff's location—instead, it allegedly occurred on network servers hosting websites or receiving data from them. *See, e.g.*, FAC ¶ 130 ("summar[izing] the proceeding [sic] allegations"). The FAC alleges no special connection to this District.

***Second***, *Senne* recognized that a plaintiff's chosen forum would not get deference if there were signs of forum-shopping. *See* 105 F. Supp. 3d at 1059. And here, as explained in the Motion, "[d]iscouraging forum-shopping provides a strong reason to transfer this case." *Madani*, 2008 WL 268986, at *3. In her Opposition, Plaintiff does not dispute that she is part of her counsel's campaign of filing cookie-cutter putative privacy class actions against internet platforms. Nor does she dispute that the cases identified in the Motion—filed by Plaintiff's counsel in this District alongside this one, but then voluntarily dismissed after assignment to Judge Chhabria and refiled in the Central District—are examples of forum-shopping. *See* Mot. 12 n.5 (collecting examples). That pattern continues with another case filed in this District, assigned to Judge Chhabria, voluntarily dismissed six days later, and refiled that same day in the Southern District with a different lead plaintiff. *See Lim v. OpenAI Global, LLC*, 26-CV-4063-VC (N.D. Cal.), Dkt. Nos. 8, 10; *Couture v. OpenAI Global, LLC*, 26-CV-3000-H-GC (S.D. Cal.), Dkt. No. 1. Plaintiff herself, represented by the same counsel, brought a putative privacy class action against another internet platform in this District, then dismissed it the day after it was assigned to Judge Chesney. *Tsering v. Triple Lift, Inc.*, 25-cv-9147-MMC (N.D. Cal.), Dkt. Nos. 8, 11. Plaintiff's only answer is that "[those] cases are unrelated to the one presently before the Court." Opp. 7 n.1. They may not be related in a formal sense, but they show a pattern of forum-shopping of which Plaintiff, her counsel, and this case are part.

Whether accorded "some deference," "minimal deference," or no deference, Plaintiff's decision to file this putative nationwide class action in this District should have little bearing on the outcome.

### C. The Private and Public Factors Favor Transfer

Plaintiff's additional arguments regarding the public and private factors are mistaken.

***The Restricted Access to the Sensitive Source Code Favors the Central District***. Thinking only of its digital nature, Plaintiff argues that the source code could easily be examined in this District. Opp. 8-9.[4] But, as the evidence shows, the source code is available only through physical access from a hard drive maintained at Defendants' Transparency Center in the Central District. Dkt. No. 22-1 (Yeh Decl.) ¶¶ 3-4; *see also Griffith* Dkt. No. 290-1 at 9 (detailing inspection of source code). As explained, Mot. 13, these careful controls mean the source code is ***not*** easily accessible in this District; in such circumstances, the forum where the source code is kept is favored. *See TransPerfect Glob., Inc. v. Motionpoint Corp.*, 2010 WL 3619565, at *4 (N.D. Cal. Sept. 13, 2010).

***The Northern District Has No Special Interest***. While Plaintiff may reside in this District, FAC ¶ 6, that factor is diminished where there is not a "particular localized interest" in the case. *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1216-17 (S.D. Cal. 2013). This is not a case involving, say, a train derailment in San Jose or unfair labor practices in Santa Cruz. Rather, Plaintiff alleges online data collection, occurring on servers that may or may not be in this District, affecting internet users around the country. "[T]here is nothing about [Plaintiff's] experience unique to this District, and the nationwide class on whose behalf she files suit purportedly suffered the exact same harm in seemingly every single district across the nation." *Meza v. Procter & Gamble Co.*, 2023 WL 3267861, at *7 (C.D. Cal. Apr. 27, 2023). Nor would this Court be transferring to a District unfamiliar with, or unlikely to vindicate, the California privacy interests at stake: the Central District shares this District's "serious concern with consumer protection and data privacy." *Greenley*, 684 F. Supp. 3d at 1044-45.

***Relative Costs Are Not a Relevant Factor Here***. Plaintiff suggests that the Court should consider the relative means of the parties in determining whether to transfer, but makes no attempt to establish that it would be meaningfully more costly for her to litigate in the Central District. Opp. 10; *see, e.g.*, *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 989 (E.D.N.Y. 1991) (no showing made that litigating in the transferee district would impose an undue hardship). In fact, as noted, Plaintiff and

[4] Plaintiff's cases address general electronic data, not sensitive, physically held source code. *See Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *2 (N.D. Cal. Oct. 17, 2025) (noting that modern technology often renders documents' physical locations unimportant); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1045 (S.D. Cal. 2023) (noting that "electronic" evidence is generally "easily transported").

her counsel sought out the Central District in *Magnite*, and her counsel has refiled in the Central District in other cases initially brought in this District alongside this case.

***<u>Griffith</u> Weighs in Favor of Transfer***. For the reasons discussed above (*supra* Section II.A), *Griffith* also weighs in favor of transfer under Section 1404(a). Plaintiff is wrong that Judge Blumenfeld "would effectively be starting over with a new case," Opp. 11, because she brings the same claims based on the same technologies at issue in *Griffith*—claims and technology that Judge Blumenfeld spent nearly two years studying, both legally and factually. This is nothing like *Linear Tech. Corp. v. Analog Devices, Inc.*, where the two cases at issue had "very little in common" because the "central focus" of each case was different. 1995 WL 225672, at *4 (N.D. Cal. Mar. 10, 1995).

***Relative Docket Congestion Supports Transfer***. Plaintiff cannot dispute that the median time to disposition and trial is lower in the Central District. *See* Opp. 12. This District also has many more civil cases pending for more than three years (2,823 vs. 900 in the Central District). *See* Federal Judicial Center, U.S. District Courts - Federal Court Management Statistics–Comparison Within Circuit, https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison0331.2026.pdf. When comparing the two districts at issue here, Judge Tigar recognized a "meaningful difference" between "the Northern District, [where] the median time elapsed from the filing of a civil case to its disposition or trial is 7.5 months and 37.1 months, respectively" and "the median time elapsed in the Central District [of] 4.6 months and 25.8 months, respectively." *Hyundai Motor Co. v. Hyundai Tech. Grp., Inc.*, 2023 WL 11950485, at *4 (N.D. Cal. Sept. 11, 2023). In the two-and-a-half years since Judge Tigar transferred that case, the disparity as to dispositions has grown (now 7.5 vs. 3.8), and the disparity as to trial has stayed essentially the same (35.1 vs. 24.3). *See* Federal Judicial Center, U.S. District—Median Time Intervals from Filing to Disposition of Civil Cases, by Action Taken, https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-judiciary/c-5. The difference has thus become even more meaningful. "Halving the time to disposition weighs in favor of transfer." *Pierucci v. Homes.com Inc.*, 2020 WL 5439534, at *6 (D. Ariz. Sept. 10, 2020).

Plaintiff inappositely cites *Selby* as holding that the differences in congestion between the Northern District and the Central District are "not stark." Opp. 12. *Selby* was comparing this District to "Colorado courts," not the Central District, and it did not describe the actual differences in

congestion or disposition time. 2025 WL 2950164, at *3. But even if this Court were to disregard the apples-to-apples decision in *Hyundai* and accept Plaintiff's invitation to follow the inapposite *Selby*, swifter case resolution in another district still weighs in favor of transfer even where the difference between "disposition times is not large." *Shore to Shore Props., LLC v. Allied World Assur*ance, 2011 WL 4344177, at *6 (N.D. Cal. Sept. 15, 2011); *accord, e.g.*, *Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 941 (N.D. Cal. 2020) (two-month difference in median time to disposition favors transfer). Ultimately, this is not a primary factor, but it weighs in favor of transfer.

**IV. CONCLUSION**

For all these reasons, the Court should transfer this case to the Central District.

Dated: July 6, 2026

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

By: */s/ Mark R. Yohalem*
Mark R. Yohalem

*Attorneys for Defendants*
*ByteDance Inc., TikTok Inc., &*
*TikTok USDS Joint Venture LLC*